# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

JESSEE CUMMINGS, JR.     )
     )
               Petitioner,   )
     )
vs.     )     Case No. CIV-99-447-S
     )
GARY GIBSON, Warden, Oklahoma     )
State Penitentiary,     )
     )
               Respondent.  )

## NUNC PRO TUNC ORDER

Petitioner, Jessee Cummings, Jr.,[1] was convicted following a jury trial, in the District Court of Coal County, Case No. CF-94-32, of two counts of First Degree Murder. In accordance with the jury's verdict, Petitioner was, on May 30, 1996, sentenced to death on each count of murder. On direct appeal, the Oklahoma Court of Criminal Appeals reversed Petitioner's conviction on Count I with instructions to dismiss and affirmed Petitioner's conviction and death sentence on Count II. *Cummings v. State*, 968 P.2d 821 (Okla. Crim. 1998), *cert. denied*, 526 U.S. 1162, 119 S.Ct. 2054, 144 L.Ed.2d 220 (1999).

---

[1] The typed style on the *pro se* motion for appointment of counsel filed by Petitioner herein indicated that Petitioner's name is "Jessee Cummings, Jr." See Docket No. 1. As a result, the Court Clerk herein opened this file under the name "Jessee Cummings, Jr." It should be noted, however, that the *pro se* motion is signed "Jessee Cummings." Further, the Statement of Institutional Accounts attached to said motion indicates Petitioner's name is "Jesse Cummings." Thereafter, counsel appointed to represent Petitioner herein filed the petition as "Jessie James Cummings," which is the name under which Petitioner sought relief in the Oklahoma Court of Criminal Appeals. See Docket No. 15. The trial transcripts from Coal County District Court, however, reflect Petitioner's name as "Jesse James Cummings, Jr."

On April 28, 1998, Petitioner filed an Application for Post-Conviction Relief in the Oklahoma Court of Criminal Appeals. On November 10, 1998, the state appellate court denied post-conviction relief. *Cummings v. State*, 970 P.2d 188 (Okla. Crim. App. 1998).

On September 24, 2002, Petitioner filed a Motion to Hold this Matter in Abeyance pending filing of a successor application for post-conviction relief in the Oklahoma Court of Criminal Appeals raising claims under *Ring v. Arizona*, 122 S.Ct. 2428 (2002). On December 16, 2002, in an unpublished opinion, the Oklahoma Court of Criminal Appeals denied relief. See Exhibit A to Docket No. 56. Petitioner now seeks relief from his death sentence pursuant to 28 U.S.C. § 2254.

## I. RECORDS REVIEWED

This court has reviewed (1) the Petition for Habeas Corpus; (2) the Response to the Petition filed by the State of Oklahoma; (3) the Reply to the Response filed by the Petitioner; (4) the transcript of the Preliminary Hearing, Volumes I-II, held on November 28, 1994 and December 8, 1994; (5) the transcript of Hearing on December 15, 1994; (6) the transcript of Formal Arraignment held on January 3, 1995; (7) the transcript of the Continuance of Formal Arraignment held on February 16, 1995; (8) the transcript of Formal Arraignment held on March 2, 1995; (9) the transcript of a Motion Hearing held on March 16, 1995; (10) the transcript of a Motion Hearing held on March 28, 1995; (11) the transcript of the Bond Reduction Hearing held on May 11, 1995; (12) the transcript of a Motion Hearing on Disposition Docket held on January 18, 1996; (13) the transcript of Formal Arraignment and Motion Hearing held on March 14, 1996; (14) the transcript of Initial Arraignment and

Motion Hearing held on March 21, 1996; (15) the transcript of Preliminary Hearing on Count II held on April 9, 1996; (16) the transcript of Formal Arraignment on Counts II and III held on April 10, 1996; (17) the transcript of the Jury Trial and Sentencing Hearing, Volumes I-IV, held on May 6-9 and May 30, 1996, including all exhibits introduced therein; 18) the Application for Post-Conviction Relief and exhibits thereto, filed April 28, 1998, in the Oklahoma Court of Criminal Appeals Case No. PC-98-134; 19) the Opinion denying relief filed November 10, 1998, in Case No. PC-98-134; 20) the second Application for Post-Conviction Relief and exhibits thereto, filed August 23, 2002, in the Oklahoma Court of Criminal Appeals Case No. PCD-2002-1068; 21) the Opinion denying relief filed on December 16, 2002, in Case No. PCD-2002-1068; and 22) all other records from the Oklahoma Court of Criminal Appeals which were transmitted to this Court, including, but not limited to, the appellate briefs and exhibits thereto. Additionally, this Court has reviewed the transcript of the Evidentiary Hearing held before the Magistrate Judge on June 25, 2001, the Findings and Recommendation of the Magistrate, the Objections by Petitioner to the Findings and Recommendation, and all other records herein.

As a result, this court finds that the records on file herein provide all the factual and legal authority necessary to resolve the matters in the  petition and, therefore, any further evidentiary hearing is unnecessary. *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992); *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981)(*Sumner I*); *Sumner v. Mata*, 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982)(*Sumner II*).

## II. SUMMARY OF THE FACTS

Historical facts found by the state court are presumed correct, unless the petitioner rebuts the same by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Since Petitioner has failed to rebut the facts as set forth by the Oklahoma Court of Criminal Appeals, this Court hereby adopts the factual findings made by the Oklahoma appellate court.

In September of 1991, [Petitioner] lived in Phillips, Oklahoma, in a residence he shared with his first wife, Sherry Cummings, his second wife, Juanita[2] Cummings, [Petitioner's] and Sherry's daughter, Debra, Juanita's son Robbie, and [Petitioner's] father, Jesse Samuel Cummings. [Petitioner] had married Sherry in 1987, and, without divorcing her, had married Juanita in 1989. He, in effect, had two wives.

On September 8, 1991, [Petitioner] went to the Atoka County Sheriff's Office and reported his sister, Judy Ann Moody Mayo, and her daughter, Melissa Moody, as missing. [Petitioner] told the clerk that friends had told him that his sister's vehicle had been seen parked at Atoka Lake on Highway 43 and that it had broken down as its hood and doors were opened. [Petitioner] reported what his sister and her daughter had been wearing at the time of their disappearance. He also said that someone had possibly picked them up. [Petitioner] showed the clerk pictures of Judy and Melissa.

The next day, on September 8, Judy's body was found floating in a small pond adjacent to Atoka Lake. She had suffered gunshot wounds to her head and neck and her body was wrapped in a quilt and a mattress pad. The following month, in October, the skeletal remains of Melissa were located by the side of a bridge over the Clear Boggy River in Choctaw County. Due to the skeletonization of the body, an exact cause of death could not be determined but evidence of sharp force injuries to several ribs was noted.

The case remained unsolved for almost three years. During this time, [Petitioner] and his two wives, moved from Phillips, Oklahoma to Lehigh, Oklahoma. In the summer of 1994, Juanita went to work for a minister named Edward Fields. Juanita told Fields that she had shot Judy and the [Petitioner] had made her do it. She also stated that [Petitioner] had wanted her to kill Melissa but she got sick and could not do it. She told Fields that after she

---

[2]Juanita is also known, and referred to herein, as "Anita."

4

killed Judy she went to work and when she got back Judy's body was gone and so was Melissa.

Subsequently, Juanita was charged with First Degree Murder for the death of Judy, and Sherry was charged with First Degree Murder for the death of Melissa. First Degree Murder charges were dropped against Sherry when she entered a plea agreement with the State and pled guilty to two counts of Accessory After the Fact and one count of Permitting a Child to be Abused. First Degree Murder charges were also dropped against Juanita and she pleaded guilty to Second Degree Murder. Both Sherry and Juanita implicated [Petitioner] in the commission of the crimes and testified against him at trial.

Sherry testified that on September 4, 1991, [Petitioner] told her to take his sister, Judy, to look at houses and to shoot Judy from behind when they got to an empty house. The next morning, on September 5, [Petitioner] left early to drive his father to the hospital in Oklahoma City. That morning, Sherry took Judy to look at houses. She did not shoot Judy while they were looking at houses. When they had finished looking at houses, Sherry and Judy returned to [Petitioner's] residence. Sherry, Judy, and Juanita watched TV in the house and the kids, Debra, Robbie and Melissa were outside. When Judy indicated she was ready to leave, Sherry went to the bathroom. While she was gone she heard five gunshots. When she returned to the living room she saw Judy sitting on the couch slumped over. Juanita had shot her. Sherry and Juanita brought all three kids into the house, covering their eyes when they passed through the living room, and they put them in a back room. They then pulled Judy through the house outside into the cellar. They cleaned blood off the couch, the floor and the living room wall. After they had cleaned, Robbie and Debra went back outside and Juanita left to go to work at the Dairy Queen in Atoka. Melissa stayed locked in the back room. Juanita returned from work around 11:00 that night.

[Petitioner] returned from Oklahoma City later that same night. When he got home Sherry and Juanita met him and Juanita told him that she had killed Judy. The three of them retrieved Judy's body from the cellar and pulled her to her truck. [Petitioner] went to the house and got something white that he wrapped around Judy. [Petitioner] drove Judy's truck and Sherry followed in the car. Juanita stayed at the house. Sherry followed [Petitioner] toward Atoka Lake. She parked her car and waited while [Petitioner] drove on further. When he came back Judy was no longer in the truck. [Petitioner] parked Judy's truck off the side of the road next to a bridge. He raised the hood and left the truck there. [Petitioner] drove home in the car with Sherry.

Sherry testified that when they arrived back at the house, [Petitioner] and Juanita went into the bedroom where Melissa was hand cuffed to the bed. They were there from fifteen to twenty minutes. Juanita came out first and

then [Petitioner] followed. [Petitioner] handed Juanita the keys to the hand cuffs and told her to bring Melissa out of the room. [Petitioner] then told Sherry and Melissa to go get in the car. Sherry testified that Melissa asked where they were going and [Petitioner] said they were going to meet her momma. Sherry fell asleep while they drove and she woke up when the car stopped. [Petitioner] got out of the car and told Melissa to get out. They walked behind the car and climbed over a railing. They were gone fifteen to twenty minutes and when he returned to the car, [Petitioner] was alone. Sherry stated that he had blood on his hands and the front of his coveralls. [Petitioner] drove back to Atoka Lake and stopped on the opposite side of the lake from where he had taken Judy. He cleaned up, threw away his shoes and they drove back toward the house. On the way there [Petitioner] threw his overalls out the window. When they arrived back at the house, [Petitioner] and Juanita took the couch and left. They were gone for about an hour before they returned.

Sherry testified that when she was first questioned by authorities about Judy and Melissa's disappearance she told them that they had left in a dark blue or black pickup that had come by the house. She claimed to have given this statement because [Petitioner] told her to.

Juanita also testified against [Petitioner] at trial. She testified that on the morning of September 5, 1991, [Petitioner] told her that he wanted her to kill his sister, Judy, and he wanted her to use the .38 to do it. [Petitioner] then left to take his father to Oklahoma City. Juanita testified that on the morning of September 5, she took Melissa to the welfare department with her. When they arrived back at the house, Juanita was there with Sherry, Judy and the kids. The kids were outside playing. Sherry went to the porch and called her to come out there. Sherry told her to do what she knew she needed to do and she brought Juanita the gun. Juanita went back into the house and shot Judy. Juanita and Sherry brought the kids into the house and told them to play in the bedroom. They then drug Judy's body to the cellar. They cleaned the house and couch and then Juanita went to work at the Dairy Queen.

Juanita testified that she arrived back home at around 11:00. When she got home she went into the bedroom where Melissa was handcuffed and lying on the bed. She went back into the living room. [Petitioner] came home a little after midnight. He asked her if it was done and she replied that it was. Then Sherry and [Petitioner] left the house and [sic] with the car keys and the truck keys. Juanita was told to stay in the house. She testified that she did not help move Judy's body but she never saw it again.

When [Petitioner] and Sherry came back, [Petitioner] told Juanita and Sherry to go in the bedroom and unhandcuff and undress Melissa. He then made them stay in the room while he raped Melissa. Afterward, [Petitioner], Sherry and Melissa left the house. Only [Petitioner] and Sherry returned.

When he returned, [Petitioner] was wearing only a pair of shorts. He had been dressed in coveralls when he left the house. He told Juanita to help him load the couch on the truck and they took it to a bridge near Centrahoma and threw it over the side of the bridge.

When questioned by authorities Juanita told them that she had been sleeping in her room when she heard someone pull up to the house and Judy hollered that she and Melissa were leaving.

*Cummings v. State*, 968 P.2d 821, 827-829 (Okla. Crim. App. 1998).

### III. PETITIONER'S CLAIMS FOR RELIEF

In his Petition filed herein on February 29, 2000, Petitioner raises eleven (11) grounds for relief. Respondent filed a Response to the Petition by and through the Attorney General of the State of Oklahoma on April 14, 2000. Specifically, Petitioner asserts the following errors entitle him to release from custody: (1) Petitioner's Fifth, Eighth and Fourteenth Amendment rights were violated as a result of retroactive misjoinder of dismissed counts, theories and aggravators; (2) Petitioner's Fifth, Eighth and Fourteenth Amendment rights were violated when his conviction was obtained upon the uncorroborated testimony of accomplices; (3) Petitioner's Eighth and Fourteenth Amendment rights were violated by the trial court's refusal to instruct the jury that Sherry Cummings and Juanita Cummings were accomplices as a matter of law; (4) Petitioner's Eighth and Fourteenth Amendment rights were violated when he was convicted on the theory of felony murder where the evidence was insufficient to support this conviction; (5) errors in the admission of evidence deprived Petitioner of a fundamentally fair trial, resulting in a denial of due process; (6) prosecutorial misconduct; (7) Oklahoma's "continuing threat" aggravating circumstance is unconstitutional on its face and as applied in Petitioner's case; (8) failure of the State to provide pretrial notice

of evidence introduced in support of the "continuing threat" aggravating circumstance deprived Petitioner of his Fifth, Eighth and Fourteenth Amendment rights; (9) improperly constituted jury deprived Petitioner of his Eighth and Fourteenth Amendment rights; (10) ineffective assistance of trial and appellate counsel; and (11) the cumulative effect of the above listed errors justify the issuance of the writ.

On February 21, 2003, Petitioner filed a Supplemental Petition raising two additional grounds for relief. Respondent filed his Response on April 2, 2003. Petitioner filed a Reply on April 3, 2003. In his supplemental Petition, Petitioner alleges: (1) the Oklahoma Court of Criminal Appeals violated the Sixth and Eighth Amendment to the United States Constitution when it reweighed the aggravating and mitigating circumstances after invalidating one of the jury's aggravating circumstances; and (2) the state court's failure to instruct the jury that they had to find that the aggravating circumstances outweighed the mitigating circumstances beyond a reasonable doubt deprived Petitioner of a fair sentencing determination in violation of the Oklahoma Constitution and the Sixth, Eighth and Fourteenth Amendments of the United States Constitution.

## IV.  STANDARD OF REVIEW

Since Petitioner filed his petition in February, 2000, this case is governed by the statute as amended by the Anti-Terrorism and Effective Death Penalty Act (AEDPA).  See *Lindh v. Murphy,* 521 U.S. 320, 326-327, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

The AEDPA made significant changes to federal habeas corpus law, specifically delineating the circumstances under which a federal court may grant habeas relief.  Under the AEDPA's provisions, this Court is precluded from granting habeas relief on any claim adjudicated on the merits by a state court

> unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Furthermore, determinations of factual issues made by state courts are presumed correct and a habeas petitioner must rebut the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

In *Williams v. Taylor*, 592 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the United States Supreme Court interpreted the above-quoted statute holding, in order for a petitioner to obtain federal habeas relief, the petitioner must first demonstrate that his case satisfies the conditions set by § 2254(d)(1).  In interpreting the "contrary to" language of the statute, the Court said the text of § 2254(d)(1) "suggests that the state court's decision must be substantially different from the relevant precedent of this Court." *Id.*, at 1519.  The Court

went on to hold that a state-court decision will be contrary to clearly established precedent "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court case law or "if the state court confronts a set of facts that are materially indistinguishable from" a decision of the Supreme Court, but nonetheless arrives at a different result. *Id.*, at 1519-1520. In considering the "unreasonable application" language of the statute, the Court held when "a state-court decision unreasonably applies [Supreme Court law] to the facts of the prisoner's case, a federal court applying § 2254(d)(1) may conclude that the state-court decision falls within that provision's "unreasonable application" clause." *Id.*, at 1521. Finally, the Court went on to say: "Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*, at 1522.

Petitioner argues, however, that 28 U.S.C. § 2254(d)(1) is "unconstitutional because it trangresses the separation of powers doctrine, impermissibly restrains the 'judicial power' of Article III courts, and violates the Supremacy Clause of Article VI." In *Williams*, however, the Supreme Court indicated that the inquiry mandated by the AEDPA

> relates to the way in which a federal habeas court exercises its duty to decide constitutional questions; the amendment does not alter the underlying grant of jurisdiction in § 2254(a),. . . . . When federal judges exercise their federal-question jurisdiction under the "judicial Power" of Article III of the Constitution, it is "emphatically the province and duty" of those judges to "say what the law is." *Marbury v. Madison*, 1 Cranch 137, 177, 2 L.Ed. 60 (1803). At the core of this power is the federal courts' independent

responsibility–independent from its coequal branches in the Federal Government, and independent from the separate authority of the several States–to interpret federal law.

*Id.*, at 1505.

Accordingly, this Court finds that § 2254(d)(1) does not unconstitutionally limit the power of this Court to determine the meaning of federal law in this action. Rather, § 2254(d) merely limits the source of clearly established law that this Court may consider; it does not dictate this Court's interpretation of governing law nor does it mandate a particular result in any pending case. Additionally, even though the AEDPA "increases the deference afforded to state court adjudications," *Moore v. Gibson*, 195 F.3d 1152, 1164 (10th Cir. 1999), construing the AEDPA to require deference to a state courts' application of federal law is entirely consistent with our constitutional system of government. Specifically, it is expected that both federal and state courts will apply the same constitutional principles to cases pending before them. The Supremacy Clause of the United States Constitution[3] compels state judges to apply federal law despite any conflict with state law. Similarly, Congress commands federal judges to apply state law in the absence of conflicting federal law. Where inevitable conflicts arise in the construction of the same law, the Supreme Court becomes the final arbitrator. Therefore, this Court finds that application of the AEDPA in Petitioner's case will not (1) violate the separation of powers doctrine; (2) impermissibly restrain the

---

[3]Article VI, § 2 of the United States Constitution provides:
> This Constitution and the Laws of the United States which shall be made in Pursuance thereof; and all treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

'judicial power' of this Court; or (3) violate the Supremacy Clause of Article VI. Thus, this Court will review Petitioner's claims in light of the principles enunciated in *Williams.*

## V. MISSOINDER ISSUES

In his first proposition, Petitioner alleges he was deprived of his rights under the Fifth, Eighth, and Fourteenth Amendments of the United State Constitution as a result of the retroactive misjoinder of dismissed counts, theories, and aggravators. Petitioner also argues his sentencing proceeding was not reliable because the jury was allowed to hear evidence of a murder which the Oklahoma Court of Criminal Appeals ultimately dismissed as well as evidence of child abuse which the trial court found was insufficient to convict Petitioner. Respondent argues that Petitioner is barred from seeking federal habeas review of the claims being presented for failing to fairly present the same claims to the Oklahoma Court of Criminal Appeals.

A.  Procedural Bar

As a general rule, if a petitioner has failed to present a claim to the state courts in the manner prescribed by the procedural rules of the state, the state court may deem the claim defaulted. *Wainright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Where a state prisoner defaults his federal claims in state court based upon an independent and adequate state procedural rule, federal review of his habeas claims will be barred. *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 2553-54, 115 L.Ed.2d 640 (1991). If the state court's finding is separate and distinct from federal law, it will be  considered "independent".   See *Ake v. Oklahoma*, 470 U.S. 8, 75, 105 S.Ct. 1087, 84 L.Ed.2d 53

(1985); *Duvall v. Reynolds*, 139 F.3d 768 (10th Cir. 1998), *cert. denied,* 119 S.Ct. 345 (1998). If the finding is applied "evenhandedly to all similar claims", it will be considered "adequate". *Maes v. Thomas*, 46 F.3d 979 (10th Cir. 1995), *cert. denied* 514 U.S. 1115, 115 S.Ct. 1972, 131 L.Ed.2d 86 (1995) (citing *Hathorn v. Lovorn*, 457 U.S. 255, 263, 102 S.Ct. 2421 2426, 72 L.Ed.2d 824 (1982)). Where the state-law default prevented the state court from reaching the merits of the federal claim, the claim ordinarily can not be reviewed in the federal courts. *Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). "Review is precluded 'unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Breechen v. Reynolds*, 41 F.3d 1343 (10th Cir. 1994), *cert. denied*, 515 U.S. 1135, 115 S.Ct. 2564, 132 L.Ed.2d 817 (1995) and cases cited therein. As noted in *Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998), *cert. denied,* 119 S.Ct. 378 (1998), the procedural default rule is not a jurisdictional rule; rather, it is based upon the principles of comity and federalism.

The Tenth Circuit has held Oklahoma's post-conviction statute, 22 O.S. Supp. 1995, § 1089, which bars review of claims that could have been raised on direct appeal including issues involving fundamental, constitutional rights, is an "adequate, as well as independent, state ground" which can effectively bar federal habeas review. *Steele v. Young*, 11 F.3d 1518, 1521 (1993).

Although Petitioner's proposition heading on direct appeal stated that Petitioner's Eighth and Fourteenth Amendment rights were violated when count one (the malice murder

count for the murder of Judy Moody Mayo) was not severed from counts two (felony and/or malice murder of Melissa Moody) and three (child abuse), Petitioner's argument on misjoinder relied solely upon Oklahoma law regarding joinder of offenses. Specifically, Petitioner argued that 22 O.S.1991, §§ 436-440 of the Oklahoma statutes were controlling. Petitioner supported this argument solely with citations to Oklahoma cases interpreting the above-referenced Oklahoma statutes. Petitioner's proposition heading, however, clearly indicated that trying the counts together violated his constitutional rights under the Eighth and Fourteenth Amendments of the United States Constitution. Thus, this Court finds Petitioner did present the "essential substance" of his claim to the state court thereby providing the state court the initial opportunity to address a violation of his constitutional rights under the Eighth and Fourteenth Amendments. *Hawkins v. Mullin*, 291 F.3d 658 (10th Cir. 2002). Further, in his Petition for Rehearing, Petitioner argued "there is a point at which unfairness can so infect a trial that the resulting conviction is a denial of due process." Petition for Rehearing filed in the Oklahoma Court of Criminal Appeals on August 24, 1998, at p. 6.

Petitioner did not, however, raise any Fifth Amendment claim before the Oklahoma Courts as it relates to misjoinder.[4] As a result, this Court finds Petitioner has failed to exhaust any Fifth Amendment claim arising from misjoinder of counts, theories, or

---

[4] Petitioner did raise allegations of Fifth Amendment violations in his Application for Post-Conviction Relief related to prosecutorial misconduct. Petitioner is currently only alleging deprivation of his Eighth and Fourteenth Amendment rights due to prosecutorial misconduct and those issues are addressed in sub-section IX herein.

aggravators and is, therefore, procedurally barred from raising such a claim herein. *Hawkins, supra.*

B. Misjoinder of offenses

Petitioner was originally charged with three counts; Count I - Murder First Degree with Malice Aforethought for the killing of Judy Ann Moody Mayo, Count II - Murder First Degree by Felony Murder or, alternatively, with Malice Aforethought by killing Melissa Moody by unknown means; and Count III - Child Abuse of Melissa Moody. Following the introduction of all evidence, the trial court dismissed the child abuse count. The trial court's instruction number three advised the jury that

> Child Abuse is the wilful or malicious injuring, torturing, maiming or use of unreasonable force upon a child under the age of 18 by one under the legal duty to render aid to the child. At the request of the Defendant, and without objection by the State, the Court has found as a matter of fact and law that the Defendant is Not Guilty of the crime of COUNT 3 CHILD ABUSE, has dismissed same, and you are so instructed. You should not consider this charge for any purpose in your deliberations as to COUNT 1 MURDER FIRST DEGREE in the death of Judy Ann Moody Mayo or COUNT 2 MURDER FIRST DEGREE in the death of Melissa Moody.

O.R. 388. The jury was not, however, advised to disregard the evidence introduced in support of Count III.

Thereafter, the jury found Petitioner guilty of Counts I and II. On direct appeal, the Oklahoma Court of Criminal Appeals reversed Petitioner's conviction on Count I. Since the appellate court dismissed Petitioner's conviction on Count I, the jury was not advised to disregard the evidence introduced in support of Count I.

Petitioner also alleges the jury was not advised that the malice aforethought murder theory in Count II had previously been dismissed for lack of subject matter jurisdiction.[5] Additionally, during the second stage of trial, the jury was not advised that it could not consider the evidence introduced in support of Counts I and III. Thus, Petitioner argues the misjoinder of counts, theories and aggravators deprived him of a fundamentally fair trial.

On direct appeal, the Oklahoma Court of Criminal Appeals addressed Petitioner's misjoinder issue on the merits, holding:

> This Court has held that "joinder of separately punishable offenses is permitted if the separate offenses arise out of one criminal act or transaction, or are part of a series of criminal acts or transactions." *Glass v. State*, 1985 OK CR 65, 701 P.2d 765, 768. Further, with respect to a series of criminal acts or transactions, 'joinder of offenses is proper where the counts so joined refer to the same type of offenses occurring over a relatively short period of time, in approximately the same location, and proof as to each transaction overlaps so as to evidence a common scheme or plan." *Id. See also Pack v. State*, 1991 OK CR 109, 810 P.2d 280, 282.
>
> In applying this law to the facts of the present case, we find that the murders of Judy Mayo and her daughter were part of a series of criminal acts which were related to one another. Although they were not killed by exactly the same means or at the exact same time, Judy and Melissa were murdered within twelve hours of each other. Further, although Judy and Melissa were not killed in the same location, the residence that [Petitioner] shared with Juanita and Sherry was central to both murders. Judy was actually killed there and Melissa was held captive there until immediately before she was taken to the location where she was killed. Finally, we find that proof as to each transaction does overlap so as to indicate a common scheme or plan. The evidence suggests [Petitioner] either initially intended to kill both Judy and Melissa or that he initially intended to kill only Judy but after Judy was killed

---

[5]The Court of Criminal Appeals held prior rulings regarding subject matter jurisdiction prevented the State from refiling the information alleging alternative theories of murder. Thus, the jury should have only been instructed in First Degree Felony Murder. Since, however, the verdict form authorized the jury to find Petitioner guilty under either theory and the jury found Petitioner guilty under both theories, the Oklahoma Court of Criminal Appeals found this error harmless. *Cummings v. State*, 968 P.2d 821, 831-832 (Okla. Crim. 1998).

16

it became necessary to also kill her daughter. There was a logical relationship between the offenses.

. . . . . . . . . We find that these two crimes were so closely related that evidence of one murder was admissible as part of the res gestae of the other. Accordingly, we cannot find that the joinder of offenses severely prejudiced [Petitioner's] right to a fair trial. This proposition is without merit.

*Cummings v. State*, 968 P.2d 821, 829 (Okla. Crim. 1998).

On rehearing, Petitioner argued, since the Oklahoma Court overturned Count I, it should have applied the harmless error analysis of *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), in deciding whether the admission of evidence in support of Count I tainted the jury verdict in Count II and/or the ultimate imposition of the death penalty during the second stage of trial. Petitioner went on to argue that his due process rights were violated "because the State did not, as a matter of law, have sufficient evidence to convict him . . . ." Petition for Rehearing and Motion to Stay the Mandate, filed in the Oklahoma Court of Criminal Appeals on August 24, 1998, at p. 6. Additionally, Petitioner argued "[t]here is a point at which unfairness can so infect a trial that the resulting conviction is a denial of due process." *Id*. Therefore, even though Petitioner now argues his due process claims a little differently, this Court finds Petitioner did, in fact, give the Oklahoma Court of Criminal Appeals an opportunity to rule upon whether his due process rights had been violated by joinder of Counts I and II.[6]

---

[6]Respondent argues a petition for rehearing before the Oklahoma Court of Criminal Appeals can not be used to raise new claims not presented during direct appeal. Petitioner did, however, argue the counts were improperly joined during his direct appeal. The issue Petitioner raised in his Petition for Rehearing arose solely from the decision rendered during Petitioner's direct appeal by the Oklahoma Court of Criminal Appeals in dismissing Count I.

Petitioner did not mention Count III in his Petition for Rehearing. The issue of misjoinder of Count III was also not addressed before the Oklahoma Court of Criminal Appeals during post-conviction proceedings. Therefore, this Court finds Petitioner has failed to exhaust any claims relating to misjoinder of Count III, thus barring this Court from reviewing those claims. *Hawkins v. Mullin*, 291 F.3d 658, 663-664 (10th Cir. 2002) (only where "essential substance" of claim is presented so that state courts have initial opportunity to address the issue will exhaustion have occurred).

In *United States v. Lane*, 474 U.S. 438, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986), the United States Supreme Court said "[i]mproper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *Id.*, at U.S. 446, n. 8, S.Ct. 730, n. 8. See also, *Quinones v. Meachum*, 811 F.Supp. 776 (D. Conn. 1991). Here, as discussed above, Petitioner is procedurally barred from raising a Fifth Amendment claim herein.

Further, although Petitioner cites the Federal Rules of Criminal Procedure to support this claim, since Petitioner's case is governed by the Oklahoma statutes regarding joinder[7] the federal rules are inapplicable to Petitioner's case. As a result, even if Petitioner were not procedurally barred from raising this issue, Petitioner would not be entitled to relief unless he could establish that a misjoinder error resulted "in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict,'" *United States*

---

[7]*See*, 22 O.S. 1991, §§ 436-440.

*v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986). Where, as in this case, the State court's factual findings indicate that Counts I and II were part of a series of criminal acts which were so closely related that the evidence of one was admissible as part of the res gestae of the other, this Court finds Petitioner has failed to establish any actual prejudice resulted from the joinder of these counts. Additionally, even though Petitioner never properly raised the issue of misjoinder of Count III before the Oklahoma Courts, this Court finds that the evidence which the state submitted in an attempt to prove Count III was admissible regardless of the insufficiency of the evidence to convict on Count III. Finally, since the jury actually found Petitioner guilty of First Degree Felony Murder,[8] this Court finds any error in instructing the jury on both First Degree Felony Murder as well as First Degree Malice Murder is harmless beyond a reasonable doubt. Therefore, this Court finds Petitioner was not deprived of a fundamentally fair trial.

C.  Effect of misjoinder on sentencing

Petitioner also argues that his sentencing proceeding was not reliable because the jury was allowed to hear evidence of a murder which the Court of Criminal Appeals ultimately dismissed as well as evidence of child abuse which the trial court found was insufficient to convict Petitioner. Petitioner relies upon *Johnson v. Mississippi*, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988), to argue that his overturned murder conviction for the death of Judy Mayo and the evidence submitted in support of the dismissed child abuse charge should not have been considered by the jury in support of the continuing threat aggravating

---

[8]See Verdict Form, O.R. 408.

circumstance.  In *Johnson v. Mississippi*, the Supreme Court overturned a Mississippi court decision where the defendant had been sentenced to death based, in part, on a felony conviction from the state of New York that was later vacated holding that such a sentence violated the Eighth Amendment prohibition against cruel and unusual punishment.  The error in *Johnson v. Mississippi*, however, "extended beyond the mere invalidation of an aggravating circumstance supported by otherwise admissible evidence . . . . . ." *Id.*, at U.S. 590, S.Ct. 1989.  The evidence considered by the jury was "revealed to be materially inaccurate." *Id.*

In this case, the reason Petitioner's conviction was dismissed was due to the lack of corroborating evidence of the accomplice's testimony, rather than proof that the accomplice's testimony was inaccurate.  Since evidence of unadjudicated crimes is admissible during sentencing proceedings,[9] Petitioner's due process rights were not violated when the jury considered the evidence relating to the murder or child abuse counts which were ultimately dismissed.    Further, in Petitioner's direct appeal, when the Oklahoma Court of Criminal Appeals invalidated one of the aggravating circumstances, the court reweighed the remaining aggravating circumstance which the jury had found existed beyond a reasonable doubt against the mitigating evidence.  Thereafter, the court upheld the sentence of death pursuant to the Supreme Court procedure approved in *Clemons, supra.*

---

[9]*Hatch v. Oklahoma*, 58 F.3d 1447, 1465 (10th Cir. 1995), *cert. denied*, 517 U.S. 1235, 116 S.Ct. 1881, 135 L.Ed.2d 176 (1996).

A review of the treatment of this claim by the Oklahoma Court of Criminal Appeals makes it clear Petitioner has failed to establish that the Oklahoma court's decision to reweigh the aggravating factor against the mitigating evidence was contrary to clearly established federal law or an unreasonable application of the same. Thus, this Court finds that, pursuant to *Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), the Oklahoma Court of Criminal Appeals followed clearly established Supreme Court precedent in reweighing the valid aggravating circumstance against the mitigating evidence after invalidating one aggravating circumstance.[10]

Further, the crux of Petitioner's second ground for relief is, due to the alleged misjoinder of the offenses, he was convicted of an offense for which he could not legally be convicted. Petitioner appears to be arguing he was convicted of Count II based on the uncorroborated evidence of a co-conspirator, which is a violation of Oklahoma law. The Oklahoma Court of Criminal Appeals found, however, based upon the evidence presented at trial, that Juanita was not an accomplice to Melissa's murder and that her testimony, under Oklahoma law, could be considered independent evidence connecting Petitioner to the commission of that murder. *Cummings v. State*, 968 P.2d 821, 831 (Okla. Cr. App. 1998). Accordingly, pursuant to 28 U.S.C. § 2254(d), Petitioner has failed to establish that he is entitled to relief on these issues.

## VI. JURY INSTRUCTIONS

---

[10]In his first supplemental proposition, Petitioner asserts the reweighing by the state appellate court, after striking an aggravating factor, violates the Sixth and Eighth Amendments to the United States Constitution. This issue is more fully addressed in subsection XIII herein.

In his third ground for relief, Petitioner asserts his Eighth and Fourteenth Amendment rights were violated by the trial court failing to instruct the jury that Sherry and Juanita Cummings were accomplices as a matter of law on Count II.  Respondent asserts Petitioner has failed to establish that the state court's adjudication of this claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.

Additionally, in the second proposition of his Supplemental Petition for Writ of Habeas Corpus, Petitioner argues the state court's failure to instruct the jury that it must find the aggravating circumstances outweighed the mitigating circumstances beyond a reasonable doubt violated the Sixth and Eighth Amendments to the United States Constitution.  Petitioner alleges the Oklahoma Court of Criminal Appeals refusal to correct this error during his second post-conviction proceeding is a violation of *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) and is, therefore, an unreasonable application of clearly established federal law.  Again, Respondent alleges there is no showing the state court's adjudication was contrary to, or involved an unreasonable application of, clearly established federal law.

A.  Accomplice Instructions

Petitioner exhausted this claim by raising it on direct appeal before the Oklahoma Court of Criminal Appeals.  The Court adjudicated the claim on the merits finding:

> As we have already determined that Juanita was not an accomplice as a matter of law to Count II, failure to instruct otherwise cannot be found to have been error.  However, because the evidence was sufficient to support a First Degree

> Murder charge against Sherry for Melissa's murder, the trial court did err by failing to instruct the jury that Sherry was an accomplice to this crime as a matter of law. This Court has held that "where there is overwhelming evidence of guilt and the presence of sufficient corroborating testimony, the failure to so instruct is harmless." *Howell v. State*, 1994 OK CR 62, 882 P.2d 1086, 1092, *cert. denied*, 514 U.S. 1113, 115 S.Ct. 1968, 131 L.Ed.2d 858 (1995). See also *Bryson v. State*, 1994 OK Cr 32, 876 ).2d 240, 256, *cert. denied*, 513 U.S. 1090, 115 S.Ct. 752, 130 L.Ed.2d 651 (1995). Because we find that there was overwhelming evidence of [Petitioner's] guilt as to Count II and that [Petitioner's] conviction on this count was supported by sufficient corroborating evidence, we find this error to have been harmless.

*Cummings v. State*, 968 P.2d 821, 831 (Okla. Crim. App. 1998).

As a general rule, improper jury instructions do not form the basis for federal habeas corpus relief. *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). In attempting to set aside a state conviction based on erroneous jury instructions, a habeas petitioner has a heavy burden. Such errors are ordinarily not reviewable in a federal habeas proceeding, "unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (citing *Long v. Smith*, 663 F.2d 18, 23 (6th Cir. 1981)).

> "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736-37, 52 L.Ed.2d 203 (1977) (footnote omitted). The question in this proceeding is not whether the instruction is "undesirable, erroneous, or even 'universally condemned,'" but whether the instruction so infected the trial that the resulting conviction violates due process. *Id.* (quoting *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.* at 155, 94 S.Ct. at 404.

*Maes v. Thomas*, 46 F.3d 979, 983 (10th Cir. 1995).

As a general rule, accomplice instructions are preferred when accomplices testify against defendants due to the inherent unreliability of this type of testimony. *Caminetti v. United States*, 242 U.S. 470, 495, 37 S.Ct. 192, 61 L.Ed. 442 (1917). Where accomplice instructions have not been given, courts have been reluctant to find reversible error if the record contains significant corroboration of the accomplice testimony. *United States v. Williams*, 463 F.2d 393 (10th Cir. 1972). Furthermore, in *Foster v. Ward*, 182 F.3d 1177, 1193 (10th Cir. 1999), the Tenth Circuit specifically held there is no constitutional requirement that an accomplice's testimony be corroborated. Additionally, accomplice instructions are not constitutionally mandated. *Id.*

Issues regarding whether a jury was properly instructed are questions of law. *United States v. Voss*, 82 F.3d 1521 (10th Cir. 1996). Accordingly, in order to grant relief on this issue, the decision of the Oklahoma Court of Criminal Appeals must be "contrary to . . . clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). Since there is no constitutional right to an accomplice instruction, this Court finds the decision of the Oklahoma Court did not violate established Supreme Court precedent. Accordingly, Petitioner is not entitled to relief on this issue.

B. Sentencing Instructions

Petitioner exhausted this claim during his second post-conviction proceeding. In rejecting this claim, the Oklahoma Court of Criminal Appeals cited *Torres v. State*, 58 P.3d 214 (Okla. Crim. App. 2002). In *Torres*, the Court noted it had repeatedly refused to require such an instruction. *Id.*, at 215. Additionally, the Tenth Circuit Court of Appeals has held

such an instruction is not constitutionally required.  *Smallwood v. Gibson*, 191 F.3d 1257, 1271 (10th Cir. 1999).

Petitioner argues, however, *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), requires the jury be instructed that aggravating factors must outweigh mitigating factors beyond a reasonable doubt.  The Supreme Court in *Ring* did nothing more than find that capital defendants were entitled to a jury determination, beyond a reasonable doubt, of any fact that could increase their maximum punishment from life to death.  In Petitioner's case, the jury ultimately decided, beyond a reasonable doubt, that their was the existence of a probability that Petitioner would constitute a continuing threat to society.  *Ring* did not change relevant Supreme Court caselaw to also require an instruction to the jury that the aggravating circumstances must outweigh the mitigating evidence beyond a reasonable doubt.  Furthermore, in *Kansas v. Marsh*, — S.Ct. —, 2006 W.L. 1725515, *8 (June 26, 2006), the Supreme Court indicated as long as the state is required to prove aggravating circumstances beyond a reasonable doubt before a defendant is considered death-eligible, the "State enjoys a range of discretion in imposing the death penalty, including the manner in which aggravating and mitigating circumstances are to be weighted."  Accordingly, Petitioner has failed to establish that the Oklahoma Court's adjudication of this claim was contrary to or an unreasonable application of relevant Supreme Court precedent.  Petitioner is therefore, not entitled to habeas relief on this issue.

## VII.  SUFFICIENCY OF EVIDENCE TO SUPPORT FELONY MURDER

In his fourth ground for relief, Petitioner argues his Eighth and Fourteenth Amendment rights were violated when he was convicted on the theory of felony murder because the evidence was insufficient to support his conviction. Petitioner alleges he raised this issue on direct appeal. Respondent asserts Petitioner has not exhausted his Eighth Amendment claim and has failed to establish that the state court's adjudication on his Fourteenth Amendment claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Federal law as determined by the United States Supreme Court.

A review of Petitioner's direct appeal brief reveals that he raised an insufficiency of the evidence claim in his fifth proposition on direct appeal. Petitioner did not cite to either the Eighth or Fourteenth Amendment. He did, however, refer the Oklahoma Court to the case of *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct 2781, 2789, 61 L.Ed.2d 560 (1979). Likewise, in his Petition herein, Petitioner does not provide any authority to support an Eighth Amendment violation. Rather, Petitioner again cites *Jackson v. Virginia, supra*, and *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Both of these cases deal with a defendant's Fourteenth Amendment right to due process. Specifically, in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), *reh. denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979), the Court held, in a federal habeas proceeding challenging the sufficiency of the evidence in a state trial, a reviewing court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt." Further, the Court indicated following conviction, a judicial review of the "evidence is to be considered in the light most favorable to the prosecution." *Id.*

Based upon the evidence presented in Petitioner's trial, this Court finds sufficient evidence was presented at trial to prove Petitioner was guilty of the felony crime of Kidnapping. Specifically, the Oklahoma Court of Criminal Appeals found the following evidence in support of its finding of the elements of this crime:

> . . . . we find that while [Petitioner] may have taken Melissa from Coal County to Choctaw County with the intent to kill her once there, the evidence was sufficient to prove that he had the intent to confine and imprison Melissa both before and during the trip to Choctaw County. Further, in light of the fact that Melissa was a child of either ten or eleven years of age, we decline to find merit in [Petitioner's] argument that Melissa was not held against her will, as the State correctly responds, this Court has held that a child of tender years is incapable of consenting to his or her seizure and abduction. *See Rojem v. State*, 1998 OK CR 57, 753 P.2d 359, 363, *cert. denied*, 488 U.S. 900, 109 S. Ct. 249, 102 L.Ed.2d 238 (1988). Accordingly, we find that the evidence presented at trial was sufficient to prove beyond a reasonable doubt that [Petitioner] was guilty of each element of the crime of Kidnapping.

*Cummings v. State*, 968 P.2d 821, 832 (Okla. Crim. App. 1998).

Clearly there was sufficient evidence, when viewed in the light most favorable to the prosecution, to establish that a rational trier of fact could have found Petitioner guilty beyond a reasonable doubt of Kidnapping Melissa Moody. To the extent the murder occurred during the course of the Kidnapping, the evidence at trial undoubtedly supported the jury's finding Petitioner guilty of felony murder. Since the facts underlying the Oklahoma Court's adjudication of the sufficiency of the evidence are presumed correct, 28 U.S.C. § 2254(e)(1),

and Petitioner has not rebutted this presumption by clear and convincing evidence, *id.*, this Court finds Petitioner has failed to establish that he is entitled to habeas relief on this issue.

## VIII.  CHALLENGE TO ADMISSION OF EVIDENCE

Petitioner asserts in his fifth proposition that he was deprived of his rights under the Eighth and Fourteenth Amendments to the United States Constitution by the introduction of prejudicial and non-probative evidence in his trial.  This issue was raised by Petitioner on direct appeal and addressed on the merits.  Respondent asserts Petitioner is not entitled to relief on this issue because he has failed to establish that the state court's adjudication resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

Trial counsel objected to the admission of numerous items, which were admitted at trial.  These items included: a photograph of Judy Mayo's body; three photographs of Melissa Moody's remains; photographs of a blanket and quilt which had been used to cover the body of Judy Mayo; the blanket and quilt which was used to cover the body of Judy Mayo; a photograph of Judy Mayo's blouse; Judy Mayo's blouse; photographs of the bed and right rear tire of Judy Mayo's truck; a photograph of a tire impression near the pond where Judy Mayo's body was found; twine bracelets found on the wrist of Melissa Moody's remains; a handwritten receipt dated June 5, 1990, where Petitioner had traded a .22 rifle for a .38 special; and a set of handcuffs.

These claims are nothing more than claims of error under state law.  As such, they are not cognizable in a federal habeas corpus action.  Federal courts simply do not have the

authority to decide questions concerning the admissibility of evidence under state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). Due process challenges to state evidentiary rulings are reviewed only for fundamental unfairness. *Matthews v. Price*, 83 F.3d 328, 331 (10th Cir. 1996). *See Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974); *Hatch v. Oklahoma*, 58 F.3d 1447, 1468 (10th Cir. 1995), *cert. denied*, 517 U.S. 1235, 116 S.Ct. 1881, 135 L.Ed.2d 176 (1996) ("[I]n federal habeas proceedings, we do not question a state court's evidentiary rulings unless the petitioner can show that, as a whole, the court's rulings rendered his trial fundamentally unfair.")

Petitioner argues, since his conviction on the murder of Judy Mayo was overturned, he was only on trial for the felony murder of Melissa Moody. Therefore, Petitioner asserts the introduction of the photographs of Judy Mayo, Mayo's vehicle, the tire imprint, and the items used to cover Mayo, as well as the actual clothing, mattress and blanket, were irrelevant and should not have been introduced into evidence. The Oklahoma Court of Criminal Appeals, however, found the two murders were "so closely related that evidence of one murder was admissible as part of the res gestae of the other." *Cummings v. State*, 968 P.2d 821, 829 (Okla. Crim. App. 1998). Further, the Oklahoma Court specifically found the photographs introduced in Petitioner's trial accurately depicted the crime scene and corroborated the testimony of the medical examiner. Thus, the Court concluded that the "probative value" of the photographs was "not substantially outweighed by the prejudicial impact." While the Court found admission of some of the evidence was cumulative, it

concluded the admission of the evidence did not affect the verdict in this case and therefore, was "harmless." *Id.*, at p. 834. Pursuant to *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), if constitutional error were involved, the state court would have had to find the error was "harmless beyond a reasonable doubt." Even though the state court indicated only that the error was "harmless," their finding that the admission did not affect the verdict in this case indicates they were applying the standard set out by the Supreme Court in *Chapman*. Since the photographs and exhibits were properly admitted under Oklahoma law, this Court finds they did not so infect the Petitioner's trial with unfairness as to deny due process. Accordingly, this claim for relief is denied.

## IX. PROSECUTORIAL MISCONDUCT

In his sixth ground for relief, Petitioner alleges that his Eighth and Fourteenth Amendment rights were violated due to prosecutorial misconduct. Petitioner first raised a claim of prosecutorial misconduct on direct appeal. At that time, Petitioner argued the prosecutor (1) argued facts not in evidence; (2) cited other crimes evidence he knew the jury had been told to disregard; and (3) engaged in unnecessary ridicule of petitioner. Ruling on the merits of this issue, the Oklahoma Court of Criminal Appeals found:

> [Petitioner] complains in his ninth proposition that numerous instances of prosecutorial misconduct deprived him of a fair trial and reliable sentencing proceeding. He first argues that the prosecutor argued facts not in evidence during both stages of trial in order to explain to the jury why Melissa's clothing was found at the same location as her mother's clothing. He also complains that the prosecutor improperly referred to evidence that [Petitioner] had raped Melissa after the trial court had dismissed Count III, the rape

charge,[11] at the end of the first stage of trial. Finally, [Petitioner] contends that the prosecution unnecessary ridiculed him. All but a couple of the comments complained of were not objected to at trial. Accordingly, as to these remarks, all but plain error has been waived. *Freeman v. State*, 1994 OK CR 37, 876 P.2d 283, 287, *cert. denied*, 513 U.S. 1022, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994).

      Our review of the record reveals that of the many comments which were not met with timely objection, none can be deemed plain error. Also, of the few comments which were objected to, none were so egregious as to require reversal. "Allegations of prosecutorial misconduct do not warrant reversal of a conviction unless the cumulative effect was such to deprive the defendant of a fair trial." *Duckett v. State*, 1995 OK CR 61, 919 P.2d 7, 19. Because we do not find that inappropriate comments deprived [Petitioner] of a fair trial, affecting the jury's finding of guilt or assessment of the death penalty, we decline to grant relief on this proposition.

*Cummings v. State*, 968 P.2d 821, 834-835 (Okla. Crim. App. 1998) (footnote added).

Thereafter, in his application for post-conviction relief, Petitioner again argued prosecutorial misconduct had deprived him of a fair trial in violation of his Fifth, Sixth, Eighth and Fourteenth Amendment rights. Specifically, Petitioner reurged the claims he had made on direct appeal and raised the following new claims: (1) the prosecution knowingly used false, misleading, and inaccurate evidence, testimony and arguments at trial; (2) the prosecution failed to disclose evidence in its possession that was favorable and material to the issue of guilt and/or punishment; and (3) the prosecution mislead the jury by taking inconsistent positions between the Petitioner's trial and the dispositions of the co-defendant's criminal cases. In ruling on this portion of Petitioner's post-conviction application, the Oklahoma Court of Criminal Appeals held:

---

[11]As indicated previously, Petitioner was charged in Count III with Child Abuse as opposed to Rape. *See*, Second Amended Information, O.R. 291.

. . . . . .Petitioner argues that misconduct by the prosecutor in using evidence and suppressing material evidence denied him a fair trial and a fair and reliable sentencing determination. In this proposition of error, Petitioner complains of several instance of alleged prosecutorial misconduct. Some of these allegations were raised on direct appeal and were addressed by this Court. These allegations are barred from further review by the doctrine of *res judicata*. Other instances of alleged prosecutorial misconduct were not raised in Petitioner's direct appeal but could have been. These allegations are waived. (citation omitted)

*Cummings v. State*, 970 P.2d 188, 191 (Okla. Crim. App. 1998).

Respondent asserts Petitioner is procedurally barred from raising any claims of prosecutorial misconduct beyond those raised on direct appeal. In an effort to overcome procedural default, Petitioner argues he received ineffective assistance of counsel,[12] that he is factually innocent of the offense, and that a fundamental miscarriage of justice will occur if these claims are not heard. In order to support his claim of actual innocence, Petitioner asserts his co-defendants' testimony was so contradictory that it should be deemed unreliable. *See*, Petition at p. 45. Additionally, Petitioner alleges "Other witnesses have now contradicted the sworn testimony of Sherry and Juanita (*e.g.*, Stella Knight). Trial counsel failed to investigate and present evidence which would have impeached the credibility of Lahoma Yaws (*e.g.*, prior false accusations of rape)." *Id.*

A. Procedural Bar

As previously discussed, where a petitioner has failed to present a claim to the state courts in the manner prescribed by the procedural rules of the state, the state court may deem the claim defaulted. *Wainright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

---

[12]Allegations of ineffective assistance of counsel are addressed more fully in sub-section XII of this opinion.

In order to excuse his procedural default, Petitioner asserts ineffective assistance of both trial and appellate counsel and factual innocence. In order for a claim of actual innocence to provide a gateway for habeas review of a defaulted claim, however, a petitioner is required to establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 867, 130 L.Ed.2d 808 (1995). After carefully reviewing the record herein, this Court finds Petitioner has failed to offer any evidence which tends to establish that he is actually innocent of the murder of Melissa Moody.[13] Simply stated, Petitioner's argument is, because his two wives' testimony was inconsistent; it is, therefore, unreliable. Petitioner refers to an affidavit from Stella Knight which he says contradicts sworn testimony of Sherry and Juanita Cummings. *See*, Exhibit C, attached to Motion to Supplement Original Application for an Evidentiary Hearing filed in the Oklahoma Court of Criminal Appeals on April 27, 1998. According to Ms. Knight's affidavit, she was interviewed by the Oklahoma State Bureau of Investigation on October 2, 1991. At that time she advised authorities she "did not notice the 'comings and goings' at the Cummings' household;" she had worked from 0600 to 1400 hours on September 5, 1991; and she had not received any telephone calls for the Cummings family

---

[13]Petitioner has twice tried to convince this Court to appoint an investigator to investigate comments posted to an online petition addressed to Oklahoma Governor Brad Henry. *See*, http://www.petitiononline.com/Igoruzzo/petition.html. In declining to attribute any weight to allegations by Petitioner that he is actually innocent based upon this online website, the Court would note that anyone can sign this petition and say anything they want to say. Further, while Petitioner's Motions allege that this online petition now shows that Lahoma Yaws was present for the rape and murder of Melissa Moody, or for the murder of Judy Mayo, contrary to Petitioner's allegations, if signature #301 was, in fact, written by Lahoma Yaws, this Court does not believe the statement means she was present when these crimes occurred. Rather, this Court believes the writer simply indicates she was familiar with what was occurring inside this family setting. Additionally, in support of his actual innocence allegations, Petitioner continually references a book entitled "Suffer the Little Children" authored by Barbara Davis and published by Kensington Publishing Corp. in 1999, to argue that the trial testimony is inconsistent with the facts contained in this fictional story about this crime. Any inconsistencies between testimony under oath and a subsequent work of fiction based upon this crime do not rise to a level sufficient to convince this Court that Petitioner is actually innocent of this crime.

on September 5, 1991. Ms. Knight also indicated she had heard five gunshots sometime during the Labor Day week of 1991 and then heard a car spin out. Ms. Knight stated Sherry Cummings later told her "that a dark colored vehicle came by firing shots and Jesse Jr. returned fire." *Id.* While Ms. Knight's statement regarding not receiving any telephone calls for the Cummings family on September 5, 1991, would have contradicted Sherry's testimony at trial about a phone call from Petitioner on that date, even if this testimony is taken as true, it does not establish that Petitioner is actually innocent of the crime for which he was convicted. Additionally, the transcript of the jury trial indicates trial counsel clearly made the jury aware of the many inconsistencies in the statements of the two wives. Despite these inconsistencies, the jury found Petitioner guilty beyond a reasonable doubt. Therefore, this Court finds Petitioner has failed to establish he is actually innocent such that his defaulted claims should be considered.[14]

---

[14]Petitioner's failure to support his claim of actual innocence with credible evidence is discussed in more detail in sub-section XII(B) of this opinion.

B.  Prosecutorial Comments during trial

Assuming arguendo that his claims were not procedurally barred, this Court finds Petitioner would still not be entitled to relief on these issues.  The Supreme Court in *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993), held habeas petitioners are not entitled to habeas relief based upon trial errors unless they can establish that the error "had substantial and injurious effect or influence in determining the jury's verdict."  While habeas petitioners may obtain plenary review of their constitutional claims, "they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'  See *United States v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986)."  *Id.*

Petitioner first claims the prosecution argued facts not in evidence by arguing Petitioner had thrown Melissa Moody's clothing in the lake contemporaneously with the disposal of Judy Mayo's clothing and body (Tr. 862, 869, 902, 991).  To support this argument, Petitioner states "neither Sherry or Juanita testified that Petitioner Cummings took clothing of Melissa Moody when he traveled to Lake Atoka with Sherry to dispose of Judy Mayo's body."  Petition at p. 98.  Thus, he argues "the prosecutor's comments were not based on reasonable inferences to be drawn from the evidence – there was no evidence." *Id.* The evidence at trial, however, clearly established that both Melissa and Judy's clothing was discovered next to Judy's body in Lake Atoka (Tr. 397-398, 404-405).  See also, State's Exhibit Nos. 3A and 7.  Additionally, Melissa's clothing was identified as the clothing Melissa was wearing the day before she disappeared (Tr. 543).  Therefore, this Court finds

the prosecutor's comments were a reasonable inference from the evidence and Petitioner was not deprived of a fair trial by said comments.

Next, Petitioner alleges the prosecutor committed misconduct by arguing the defendant had raped Melissa and then killed her, in part, to avoid or prevent arrest or prosecution for the rape (Tr. 862-863, 902, 991-992, and 995).[15] Petitioner complains of the prosecution proceeding to trial without any evidence of rape except the testimony of an accomplice to the rape and alleges the prosecutor violated the trial court's order which had granted acquittal on the charge by commenting on it. Further, without citation to any Oklahoma authority, Petitioner asserts the prosecutor knowingly violated Oklahoma statutory law in pursuing a charge through the use of uncorroborated accomplice testimony. According to the record, however, Petitioner was never charged with rape. Rather, the charge dismissed by the court was Child Abuse. Directing acquittal on the Child Abuse count did not negate the fact that the defendant had committed a separate and distinct offense of rape. Additionally, Petitioner does not argue that there was no evidence of rape. The comments of the prosecutor were reasonable inferences based upon the evidence at trial.

It is important to realize the majority of these comments occurred during the sentencing phase and were, during the second of stage of trial, unquestionably appropriate. *Hatch v. Oklahoma*, 58 F.3d 1447, 1465 (10th Cir. 1995), *cert. denied*, 517 U.S. 1235, 116 S.Ct. 1881, 135 L.Ed.2d 176 (1996). Furthermore, the evidence of Petitioner's guilt in the

---

[15]The comments on pages 862-863 and 902 occurred during the first stage of trial. The remaining comments occurred during the second stage of trial.

first stage of the trial was overwhelming. The comments which Petitioner complains were improper during the first stage of trial occupy less than one half of a page of a transcript which is over a thousand pages long. Additionally, defense counsel's closing argument highlights the fact that although Anita testified the defendant had committed rape on Melissa (Tr. at p. 887) the judge had ruled that petitioner was not guilty of Child Abuse and therefore, the jury did not "have to consider that at all" (Tr. at p. 893). Based upon the entire record below, this Court finds even if some of the comments during the first stage of trial were improper, they did not prejudice petitioner or render his trial fundamentally unfair.

C. Failure to disclose exculpatory material

Petitioner also argues the prosecution's failure to disclose all evidence in its possession and control favorable and material to the issue of his guilt and punishment violated his due process rights. In it's response, the Respondent asserts there were no *Brady*[16] violations.

In order to establish a *Brady* violation, a habeas petitioner must show that the prosecution suppressed evidence favorable to the petitioner and that the evidence was material. *Stafford v. Ward*, 59 F.3d 1025, 1027 (10th Cir. 1995), *cert. denied,* 515 U.S. 1173, 115 S.Ct. 2640, 132 L.Ed.2d 896 (1995). In order to show the evidence was "material", there must be "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Johnson v. Gibson*, 169 F.3d 1239, 1254 (10th Cir. 1999). "A 'reasonable probability' is a probability sufficient to undermine

---

[16]*Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

None of the evidence Petitioner asserts was not disclosed to trial counsel was "material" to the outcome of Petitioner's case. Further, even if the allegedly exculpatory evidence was material, the record is devoid of evidence that the prosecution in fact withheld any evidence. For instance, Petitioner claims Sherry Cummings had made previous accusations of rape to law enforcement which were determined to be untrue. In support of this claim, Petitioner references an affidavit signed by post-conviction counsel and a letter dated October 29, 1995, signed by Mrs. Sherry M. Ingle. Other than a recitation of "sources for background information," the affidavit of post-conviction counsel contains no references to "previous accusations of rape to law enforcement" by Sherry Cummings. Further, the referenced letter does not indicate what "rape charges," if any, are being addressed. Nothing in the letter indicates Sherry Cummings made the charges against anyone; that Sherry Cummings was the victim of a rape; or that the charges were determined to be unfounded. Simply put, nothing in these two documents supports Petitioner's claim.

Additionally, Petitioner asserts telephone records of Stella Knight establish that she did not receive a phone call from Petitioner on the day of the murder, contradicting testimony presented at trial. These records, however, only list the outgoing toll charges to Knight's

phone.  Further, a review of the records indicate defense counsel listed Ms. Knight as a defense witness, and then apparently decided not to call her as a witness.

Petitioner also alleges the prosecution failed to disclose photographs seized from Petitioner's residence which depicted sexually explicit conduct between Petitioner's two wives and other men and women.  This Court fails to see how photographs depicting the sexual lifestyle of these women would have been admissible; and, therefore, these photographs were not material.  In addition, Petitioner claims the prosecution failed to disclose to trial counsel audio tapes seized from Petitioner's residence which included interviews he had conducted into the murders and law enforcement reports and/or tape recordings of Petitioner's second interview with law enforcement.  The testimony at an evidentiary hearing before the magistrate judge indicated defense counsel were provided access to all physical items which had been seized in this case (Tr. of Evidentiary Hearing held on June 25, 2001, at pp. 140-147) and that no recordings were made of Petitioner's second interview with law enforcement (*Id*., at p. 90).

Finally, assuming some of these items were exculpatory, Petitioner has never provided proof the prosecution withheld any evidence.  Even though there are a number of appendices attached to Petitioner's state court post-conviction application, nowhere do these appendices contain any affidavits from trial counsel asserting the prosecution withheld evidence.  On October 25, 2001, the magistrate judge, after holding an evidentiary hearing,  made the following conclusion of law:  "Since the state did not withhold any evidence from defense counsel, Petitioner has failed to establish a *Brady* violation."  (citation omitted) (Docket No.

50).  Petitioner did not object to this conclusion, see Docket No. 52.  Accordingly, this Court adopts the magistrate judge's recommendation regarding this issue and denies Petitioner's claim for relief.

## X.  CONTINUING THREAT

In ground seven, Petitioner asserts that Oklahoma's "continuing threat" aggravating circumstance is unconstitutionally vague.  Additionally, Petitioner argues this aggravating circumstance was vague as applied because the jury "was allowed to consider conduct for which Petitioner Cummings was, in effect, acquitted (i.e., the child abuse of Melissa Moody, the rape of Melissa Moody, the murder of Judy Mayo, the malice aforethought murder of Melissa Moody, his continuing threat in regards to a death sentence for Judy Mayo, and his alleged murder of Melissa Moody to avoid apprehension on the underlying felony.)"  Petition at p. 108.

The Oklahoma Court of Criminal Appeals considered Petitioner's contention that this circumstance was unconstitutional "as interpreted and applied."  *Cummings v. State*, 968 P.2d 821, 836 (Okla. Crim. 1998).  Relying on past precedent, the appellate court upheld the constitutionality of Oklahoma's "continuing threat" aggravating circumstance.  *Id*. Additionally, the appellate court considered, on the merits, Petitioner's challenge to the State's use of evidence of unadjudicated crimes to support this aggravating circumstance. *Id*.  In denying Petitioner's claim, the appellate court stated:

> [Petitioner] first contends in his twelfth proposition that his death sentence should be vacated because the "continuing threat" aggravating circumstance, as interpreted and applied in this case, created the risk of

arbitrary and capricious imposition of the death penalty. [Petitioner] acknowledges that this Court has consistently upheld the constitutionality of the "continuing threat to society" aggravating circumstance. (citations omitted) However, he urges us to reconsider this ruling. We find the law is settled and [Petitioner] has failed to give this Court any compelling reason to revisit this issue now.

Next, [Petitioner] challenges the State's use of evidence of unadjudicated crimes to support the "continuing threat" aggravating circumstance. Specifically, [Petitioner] complains that this aggravating circumstance was supported only by the uncorroborated testimony of Lohoma (sic) Yaws, Sherry Cummings' sister, that [Petitioner] had raped her when she was fourteen years old. This crime was not reported to the police as Ms. Yaws testified that [Petitioner] threatened to kill her and her mother if they told what had happened. [Petitioner] contends that it is offensive to due process and to the prohibition against cruel and unusual punishments that he was sentenced to death on the basis of such unreliable evidence. Again, [Petitioner] acknowledges that this Court has long allowed the use of unadjudicated crimes to support the "continuing threat" aggravating circumstance. We have held that evidence relevant to the proof of this aggravating circumstance includes prior convictions, prior unadjudicated crimes and other acts which show a pattern of conduct that would indicate a propensity toward violence that likely would continue in the future. (citations omitted) Accordingly, we find that the evidence used to support the "continuing threat" aggravating circumstance in the present case was appropriate and does not render [Petitioner's] death sentence unconstitutional.

*Cummings v. State*, 968 P.2d 821, 837 (Okla. Crim. 1998).

During state post-conviction proceedings, Petitioner attempted to revisit this issue arguing that the continuing threat aggravating circumstance was vague and overbroad. The Oklahoma Court of Criminal Appeals held that the constitutionality and application of the "continuing threat aggravating circumstance was raised and addressed on direct appeal and therefore, further review of this issue on post-conviction is precluded by the doctrine of res judicata. 22 O.S.Supp. 1995, § 1089©." *Cummings v. State*, 970 P.2d 188, 192 (Okla. Crim. 1998). Respondent argues Petitioner has failed to establish that the Oklahoma court's

adjudication of the claim is contrary to relevant Supreme Court precedent. Thus, Respondent urges this Court to deny relief pursuant to 28 U.S.C. § 2254(d)(1).

Additionally, in ground eight, Petitioner alleges that he was deprived of his rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution because the State failed to provide pretrial notice of the evidence introduced in support of the "continuing threat" aggravating circumstance. Respondent argues Petitioner's Fifth Amendment claim is barred from review because Petitioner never raised this claim in the state court system. Further, Respondent argues Petitioner has failed to establish, as to the Eighth and Fourteenth Amendment claims that the Oklahoma court's adjudication of the claim "resulted in a decision contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

A review of Petitioner's direct appeal brief indicates Petitioner alleged his death sentence violated the Eighth and Fourteenth Amendments of the United States Constitution and Article II, § 7 and 9 of the Oklahoma Constitution. Specifically, Petitioner's direct appeal brief simply urged the appellate court to overturn prior precedent upholding Oklahoma's "continuing threat" aggravating circumstance. Additionally, Petitioner argued that the use of unadjudicated crimes in support of this aggravator violated Petitioner's right to be free from cruel and unusual punishment and to due process of law. Accordingly, this Court finds Petitioner has never raised any Fifth Amendment claims in state court. Since,

however, Petitioner argues in proposition ten that he received ineffective assistance of both trial and appellate counsel, this Court will address this issue.

## A. "Continuing threat"

Oklahoma's "continuing threat" aggravating factor authorizes the imposition of the death penalty if the jury finds there to be "the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." 21 O.S. § 701.12(7). The Tenth Circuit Court of Appeals has held the continuing threat factor used in the Oklahoma's statutory sentencing scheme is constitutional. *Nguyen v. Reynolds*, 131 F.3d 1340, 1352-54 (10th Cir.1997), cert. denied, 525 U.S. 852, 119 S.Ct. 128, 142 L.Ed.2d 103 (1998). See also, *Ross v. Ward*, 165 F.3d 793, 800 (10th Cir.1999) (citing *Castro v. Ward*, 138 F.3d 810, 816 (10th Cir.), *cert. denied*, 525 U.S. 971, 119 S.Ct. 422, 142 L.Ed.2d 343 (1998) and Nguyen) and *Fowler v. Ward*, 200 F.3d 1302, 1313 (10th Cir. 2000). While acknowledging that *Nguyen* and its progeny are binding on this Court's resolution of this issue, Petitioner argues Oklahoma juries "are misinformed on how to apply the aggravator properly." Petition at p. 83. Thus, Petitioner asserts this Court should recognize there are inherent problems with this aggravator and grant relief under the principles enunciated in *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), since petitioner's jury was "only instructed on the statutory language of the aggravating circumstance without any guidance on how to determine if it existed in this case." Petition at p. 83.

In *Walton v. Arizona*, 497 U.S. 639, 653, 110 S.Ct. 3047, 3057, 111 L.Ed.2d 51 (1990), the Court stated, "[i]t is not enough to instruct the jury in the bare terms of an aggravating circumstance that is unconstitutionally vague on its face." In *Nguyen v. Reynolds*, 131 F.3d 1340, 1353-54 (10th Cir. 1997), in rejecting a vagueness challenge to the constitutionality of Oklahoma's "continuing threat" aggravator, the Tenth Circuit Court of Appeals specifically held:

> The United States Supreme Court has rejected a vagueness challenge to a nearly identical aggravating factor used by the State of Texas. . . . . The fact that Oklahoma chooses to grant a sentencing jury wide discretion to make a predictive judgment about a defendant's probable future conduct does not render the sentencing scheme in general, or the continuing threat factor in particular, unconstitutional. Although this predictive judgment is not susceptible of "mathematical precision," we do not believe it is so vague as to create an unacceptable risk of randomness. To the contrary, we believe the question of whether a defendant is likely to commit future acts of violence has a "common-sense core of meaning" that criminal juries are fully capable of understanding. Accordingly, we conclude the continuing threat factor used in the Oklahoma sentencing scheme does not violate the Eighth Amendment.

In light of *Nguyen*, this Court finds Petitioner has failed to establish that the Oklahoma Court of Criminal Appeals ruling is either contrary to, or an unreasonable application of, clearly established Supreme Court precedent to the facts herein as required by 28 U.S.C. § 2254(d)(1). Additionally, Petitioner has presented no evidence establishing that the Oklahoma Court of Criminal Appeals decision regarding the facts found in support of this aggravator were unreasonable. See 28 U.S.C. § 2254(d)(2). Therefore, this Court will not readdress this issue. Accordingly, Petitioner's claim is denied.

**B. Notice of Unadjudicated Crimes to Support "Continuing Threat" Aggravator**

A review of Petitioner' direct appeal brief supports Respondent's argument that Petitioner never specifically quoted the Fifth Amendment before the Oklahoma courts. Likewise, Petitioner did not refer specifically to the Fourteenth Amendment to the United States Constitution. Rather, Petitioner stated only that "the use of unadjudicated crimes in support of this aggravating circumstance violated [Petitioner's] rights prohibiting the infliction of cruel and unusual punishments and to due process of law." Brief of Appellant filed in the Oklahoma Court of Criminal Appeals on July 7, 1997, at p. 89. In support of this proposition, Petitioner indicated that the use of unadjudicated crimes in the second stage of trial rendered his death sentence "too unreliable to meet the requirements of the Eighth Amendment." *Id.*, at p. 91.

While claiming the State failed to provide pretrial notice of the testimony of Lahoma Yaws sufficient to satisfy the requirements of 21 O.S.1991, § 701.10, Petitioner admits that in the Bill of Particulars filed on April 10, 1996, he was advised that the State intended to use evidence of the rape of Lahoma Yaws in support of the "continuing threat" aggravating circumstance. Additionally, as indicated by the Oklahoma Court of Criminal Appeals, a review of the transcript of the preliminary hearing, establishes that as early as November 8, 1994, Petitioner was aware of allegations that he had raped Lahoma Yaws. See Preliminary Hearing held on November 8, 1994, at pp. 177-180. Further, Petitioner had an opportunity to cross-examine the witness' testimony regarding this rape. Thus, unlike the defendant in *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), Petitioner clearly was aware of the allegations against him in time to prepare a defense against the alleged

conduct. The Tenth Circuit Court of Appeals has consistently held that the "consideration of evidence of unadjudicated crimes in imposing the death sentence does not violate a petitioner's due process rights." *Williamson v. Ward*, 110 F.3d 1508, 1523 (10th Cir. 1997), citing *Hatch v. Oklahoma*, 58 F.3d 1447, 1465 (10th Cir. 1995). Accordingly, this Court finds Petitioner's Fifth Amendment rights were not violated because Petitioner was given pretrial notice that unadjudicated crimes would be introduced in support of the "continuing threat" aggravating factor.

### XI. NON-RESIDENT JUROR

In his ninth proposition, Petitioner argues he was deprived of his rights under the Eighth and Fourteenth Amendments to the United States Constitution "due to an improperly constituted jury." Specifically, Petitioner's complaint is that one of the jurors, who ultimately sat upon the jury which convicted Petitioner, was a resident of a different county than the one in which the crime was committed and in which Petitioner was tried. Petitioner did not raise this issue at the time the juror was seated nor on direct appeal. Rather, Petitioner first raised this issue during post-conviction proceedings. The Oklahoma Court of Criminal Appeals refused to address the issue finding that "this issue could have been raised on direct appeal and is now waived and barred from review. . . ." *Cummings v. State*, 970 P.2d 188. 192 (Okla. Crim. App. 1998). Thus, Respondent argues Petitioner has waived this claim and it is, therefore, barred from habeas review.

Petitioner argues appellate counsel was unable to comply with the duties imposed upon him because he did not have sufficient resources to investigate this issue. Thus, in an

effort to establish cause, Petitioner states appellate counsel rendered ineffective assistance of counsel.  Alternatively, Petitioner asserts the juror's failure to notify the court and counsel that she was not a qualified juror creates sufficient "cause" to allow this Court to hear this claim.

While this claim clearly appears to have been waived by trial counsel's failure to object, [17] even if not procedurally barred, the Petitioner has failed to establish that  he is in custody in violation of the Constitution of the United States.  Specifically, Petitioner has not cited, nor has this Court found a federal constitutional right to have a jury made up solely of residents of the particular county in which the crime was committed.  Rather, the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury. . . ."  United States Constitution, Amd. VI. In *Duncan v. Louisiana*, 391 U.S. 145, 149, 88 S.Ct. 1444, 1447, 20 L.Ed.2d 491 (1968), the Supreme Court said:

> Because we believe that trial by jury in criminal cases is fundamental to the American scheme of justice, we hold that the Fourteenth Amendment guarantees a right of jury trial in all criminal cases which -- were they to be tried in a federal court -- would come within the Sixth Amendment's guarantee.

In *Singer v. United States*, 380 U.S. 24, 36, 85 S.Ct. 783, 790, 13 L.Ed.2d 630 (1965),  the Court said "A defendant's only constitutional right concerning the method of trial is to an impartial trial by jury."  Absent a showing that the non-resident juror was prejudiced or held

---

[17]Title 38 O.S. § 29 prevents the setting aside of any verdict rendered by a jury unless the irregularity is "specifically presented to the court at or before the time the jury is sworn to try the cause."

some other bias against the Petitioner, Petitioner can not establish that he received a fundamentally unfair trial simply because this juror served on his jury. Therefore, absent any factual allegations that the juror was not impartial or that Petitioner was otherwise prejudiced by the presence of this juror on his jury, this Court finds Petitioner has not established any error which would entitle him to habeas relief. This claim simply has no merit.[18]

## XII. INEFFECTIVE ASSISTANCE OF COUNSEL

In his tenth proposition, Petitioner alleges he was deprived of his rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution due to ineffective assistance of trial and appellate counsel. Respondent argues that most of Petitioner's claims of ineffective assistance of counsel are barred from habeas review by this Court due to Petitioner's failure to raise them during his direct appeal.

During direct appeal Petitioner argued his counsel (1) failed to investigate and use available evidence concerning the Petitioner's personality and character that was inconsistent with the State's theory of guilt and justification for a death sentence and (2) failed to object to improper arguments. The Oklahoma Court of Criminal Appeals, relying on the principles enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), denied these claims on the merits holding:

> . . . . . we find [Petitioner] has shown this Court that trial counsel could well have utilized this information at trial and that it may have been prudent for him to do so. However, [Petitioner] has not shown by clear and convincing

---

[18]Similarly, any claim counsel was ineffective for failing to raise this issue, absent factual allegations the juror was biased, has no merit.

evidence a strong possibility that defense counsel was ineffective for failing to utilize or identify the complained-of evidence.

* * * * *

We agree that defense counsel would have been well advised to object to the prosecutor's speculation about how Melissa's clothes came to be found in the lake with her mother's clothes. We also agree that defense counsel should have objected to the prosecutor's references to the alleged rape in first stage closing argument and during the second stage of trial. However, we do not find that these errors rendered counsel's performance deficient or that he was prejudiced by deficient performance.

*Cummings v. State*, 968 P.2d 821, 835-36. (Okla. Crim. 1998).

During post-conviction proceedings, Petitioner again argued trial counsel was ineffective for failing to investigate and properly prepare for trial. This alleged deficiency was supported by numerous additional claims of improper investigation and/or preparation. These additional claims included more than 65 specific instances of conduct post-conviction counsel asserted established trial counsel had failed to investigate and, therefore, established trial counsel had not properly prepared for trial. Additionally, post-conviction counsel alleged appellate counsel, who worked in the same OIDS office as post-conviction counsel, was ineffective for failing to elaborate more artfully additional complaints relating to improper investigation and/or preparation. Post-conviction counsel also argued trial counsel was ineffective for conceding Petitioner's guilt without his permission.

The Oklahoma Court of Criminal Appeals found that the claims of ineffective assistance of trial counsel were based on facts contained within the appellate record and/or available to direct appeal counsel. As a result, the Court held review of Petitioner's additional ineffective assistance of trial counsel claims were barred. Additionally, the

Oklahoma Court found Petitioner's claims against appellate counsel were nothing more than a disagreement over whether appellate counsel should have raised more claims against trial counsel. In denying Petitioner's claims against appellate counsel, the Court held Petitioner had failed to establish that appellate counsel's failure to raise the issue of ineffective assistance of counsel more fully was not unreasonable under prevailing professional norms. Thus, the Court found Petitioner had not established appellate counsel's performance was deficient. As a result, the Court refused to consider Petitioner's substantive ineffective assistance of trial counsel claims. *Cummings v. State*, 970 P.2d 188, 191 (Okla. Crim. App. 1998).

A. Procedural Bar

As previously discussed, federal courts do not ordinarily address issues which have been defaulted in state court based upon independent and adequate state procedural grounds. *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998). Where a state court refuses to hear ineffective assistance claims not raised on direct appeal, the procedural ground is considered "independent." *Cannon v. Mullin*, 383 F.3d 1152, 1172 (10th Cir. 2004).

When considering ineffective assistance of trial counsel claims, several conditions must exist for a state procedural default to be considered "adequate." First, petitioner must have had an opportunity to consult with separate counsel on appeal in order to obtain an objective assessment of trial counsel's performance. *See, Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *Osborn v. Shillinger*, 861 F.2d 612, 623 (10th Cir. 1988); and *Brechen v. Reynolds*, 41 F.3d 1343, 1363-64 (10th Cir. 1994). Second, the

state must provide a procedural mechanism on direct appeal whereby a petitioner can adequately develop the factual basis of his claims of ineffectiveness. *Breechen*, at 1364.

Despite the fact Petitioner was represented by new counsel on direct appeal, he asserts because one of his trial lawyers and appellate counsel worked for the same office, *i.e.*, the Oklahoma Indigent Defense System, appellate counsel cannot be deemed "separate counsel" for appeal purposes. In *English v. Cody*, *supra* at 1174, the Tenth Circuit indicated the issue of

> [W]hether trial and appellate attorneys from the same "office" should be deemed "separate" counsel will turn on the specific circumstances. A statewide public defender's office with independent local offices, and perhaps even a distinct appellate office, would not raise the same concerns as when trial and appellate counsel work in adjacent rooms.

See also, *Cannon v. Mullin*, 383 F.3d 1152, 1174 (10th Cir. 2004).

An affidavit, submitted by Petitioner, of Anne M. Moore, Division Chief of the Capital Direct Appeals Division, indicates

> The Oklahoma Indigent Defense System is organized into Divisions that function as separate law firms for purposes of representing clients. Each Division has its own budget. The Executive Division oversees the operations of the agency, including personnel and finance, and administers the noncapital trial program, which contracts with Oklahoma attorneys to represent defendants in noncapital criminal cases. The General Division is court appointed to represent clients on direct appeal to the Oklahoma Court of Criminal Appeals in noncapital cases. The Capital Trial Division is court appointed to represent defendants in death penalty cases pending in district court. The Capital Post-Conviction Division is obligated by statute to represent all death-sentenced defendants in Oklahoma on applications for post-conviction relief, including but not limited to defendants who were represented by the Capital Direct Appeals Division on direct appeal.
> The Capital Direct Appeals Division ("the Division") is appointed by the district courts of Oklahoma in all 77 counties to represent death-sentenced

clients on direct appeal from the trial court to the Oklahoma Court of Criminal Appeals. The Division also represents clients on certiorari petitions to the United States Supreme Court if their cases are affirmed by the Court of Criminal Appeals.

*See*, Exhibit B, attached to the Disclaimer by Direct Appeal Counsel filed in the Oklahoma Court of Criminal Appeals on July 7, 1997.

In this particular case, Petitioner was represented by three attorneys. Mr. Faulk was employed by the Oklahoma Indigent Defense System, hereinafter referred to as OIDS, and was assigned to the Capital Trial Division. His office was in the OIDS office complex in Norman, Oklahoma. Mr. Minter was a private attorney who contracted with OIDS to act as local counsel in the representation of petitioner. Mr. Minter's office was in south, central Oklahoma. Appellate counsel also worked in the OIDS office complex, in Norman, Oklahoma. He was, however, assigned to the Capital Direct Appeals Division.

Further, appellate counsel actually raised at least two issues of ineffective assistance of trial counsel on direct appeal, which appear fairly identical although not as detailed as those raised in petitioner's post-conviction proceedings by subsequent post-conviction counsel who also worked in the OIDS office complex in Norman, Oklahoma. Specifically, on direct appeal, Petitioner's appellate counsel argued trial counsel made several errors during both stages of trial which denied him effective assistance of counsel. First, appellate counsel argued counsel was ineffective for failing "to investigate and use available evidence concerning Appellant's personality and character that was inconsistent with the State's theory of guilt and its justification for a death sentence." Additionally, appellant counsel

alleged "trial counsel was ineffective because he failed to object to the prosecution's improper argument and improper references to the alleged rape of Melissa Moody after the trial court had dismissed the child abuse/rape charges."  To the extent this Court finds the comments of the prosecutor did not prejudice Petitioner, this Court does not address the issue of  whether counsel was ineffective for failing to object to these comments.

Nonetheless, Petitioner argued appellate counsel was not allowed to develop his ineffective assistance of counsel claims because, according to appellate counsel, OIDS did not have sufficient funds to do the type of investigation needed to comply with the Oklahoma Court of Criminal Appeals requirements enunciated in *Walker v. State*, 933 P.2d 327 (Okla. Crim. App. 1997).  As a result, out of an abundance of caution, on April 11, 2001, this Court referred this matter to the magistrate to hold an evidentiary hearing on two of Petitioner's allegations regarding ineffective assistance of trial counsel, to-wit: whether trial counsel was ineffective for failing to properly investigate and prepare a defense to the State's theory of the case and conceding Petitioner's guilt without his permission.

On October 25, 2001, the Magistrate filed his Findings and Recommendation[19] in which the magistrate found petitioner had the assistance of two experienced attorneys who, prior to their representation of petitioner, had both tried several death penalty cases.  Based upon their conversations with the defendant, as well as the contents of a history packet their

---

[19]After carefully reviewing the transcript of the evidentiary record herein, as well as counsel's objections to the magistrate's findings and recommendation, this Court hereby adopts and affirms the magistrate's findings and recommendations. To the extent these findings are relevant to issues raised herein, they have been appropriately referred to and counsel's objections have been addressed herein where appropriate.

investigators compiled on Petitioner, counsel did not request a psychological evaluation of Petitioner.

Petitioner's counsel objects to the conclusions of law by the magistrate judge wherein the magistrate finds counsel's conduct in not requesting a psychological evaluation of petitioner was reasonable in light of all of the circumstances of this case. Yet, the record is clear that nothing in Petitioner's history indicated any mental health issues; Petitioner had no history of child abuse; and there was absolutely no evidence Petitioner had ever suffered any brain damage. *See*, Transcript of Evidentiary Hearing held on June 25, 2001 (hereinafter referred to as Tr.Ev.Hrg.), at pp. 18 and 111. Although Petitioner objects to paragraph 16 of the Findings and Recommendations, the objection deals solely with counsel's failure to obtain a psychological evaluation. Nothing contained in Petitioner's objection specifically refutes the factual findings made by the magistrate judge in paragraph 16.

While the Supreme Court has indicated "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time," *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065 (1984), counsel apparently objects to the findings contained in paragraph 16 simply because a psychological evaluation of Petitioner, after he has been tried and

incarcerated for several years, reveals a different type of person than the one described in the record by trial counsel at the time of trial.[20]

The factual findings by the magistrate, however, provide insight into the circumstances which existed at the time of trial and ultimately were responsible for counsel's conduct. Without engaging in the very type of hindsight which the Supreme Court has criticized, this Court finds based upon the record in this particular case, including Petitioner's statements to counsel at the time and Petitioner's known social history, counsel made a reasonable decision, at the time of trial, not to pursue psychological testing. Furthermore, in light of all of the evidence at Petitioner's trial, this Court agrees with the magistrate's specific conclusion that "[e]ven if Petitioner's trial counsel had acted unreasonable in failing to hire experts for either consulting or testifying, . . . . .there is not a reasonable probability that the result of the trial would have been different." Findings and Recommendation at pp. 13-14, ¶9.

Furthermore, while appellate counsel readily filed a "disclaimer" asserting he was unable to fully develop the factual basis of his ineffective assistance of counsel claims sufficient to comply with the mandates of *Walker v. State*, *supra*, a review of the record below as well as the evidentiary hearing held by the magistrate reveals the "disclaimer" was

---

[20]Even though trial counsel could not remember, almost five (5) years after the fact, all of the things he discussed with petitioner; counsel indicated petitioner was "very active in the case" and they talked a lot about the case (Tr.Ev.Hrg., at p. 117). Further, despite the subsequent psychological evaluation, counsel found petitioner to be of "average intelligence." *Id.* Additionally, this Court believes a "shy introverted person who was incapable of controlling others" would have a difficult time resisting the significant amount of pressure which was placed upon Petitioner by counsel to convince him to accept some type of plea negotiations. *See*, Tr.Ev.Hrg. at pp. 11-13. Finally, the Court would note the age differences in Petitioner and his two wives. Both wives were 19 when they married Petitioner. *See*, Tr. at pp. 510 and 688. Petitioner was approximately 32 years old when he married Sherry and 33 years old when he married Anita. *Id. See also*, Appendix 23 to Post-Conviction Application listing Petitioner's date of birth as 11/19/55.

merely a tactical ploy to prevent any ineffective assistance of counsel claims from later being deemed procedurally barred by the State of Oklahoma. Appellate counsel could have, and may well have, obtained all of the information trial counsel provided at the evidentiary hearing simply through a telephone call with trial counsel. In fact, the disclaimer filed by appellate counsel indicates he had, during his preparation of petitioner's direct appeal, reviewed trial counsel's records. Additionally, a simple telephone call to trial counsel would have provided appellate counsel with the facts necessary to fully develop this claim.

It seems significant to this court that, almost five (5) years after the trial, no one asked trial counsel to review their records, nor had they done so, at the time of the evidentiary hearing. As a result, at the hearing trial counsel could only speculate, based upon affidavits obtained during post-conviction proceedings by attorneys who worked in the same OIDS office located in Norman, Oklahoma, as appellate counsel, as to what actions they might have taken and/or why they had not taken certain actions. Defense counsel testified he had developed a theory of defense at the time of trial and he felt he had provided the best defense available in light of all of the facts he knew to exist at that time. Defense counsel, however, admitted that in retrospect you could always think of things that could be done better or differently (Tr.Ev.Hrg., at p. 116). This is the very type of hindsight the Supreme Court has indicated should not be undertaken by reviewing courts. *Strickland v. Washington*, *supra*.

Finally, a review of post-conviction counsel's pleadings shows post-conviction counsel did nothing more than attempt to reiterate and expand upon the exact claims of ineffective assistance of counsel which had been raised in the direct appeal by appellate

56

counsel. Specifically, the affidavit from the psychologist regarding Petitioner's psychological assessment was prepared as a direct result of the referral from appellate counsel. Thus, it is clear, despite appellant counsel's attempt to disclaim liability for failing to properly investigate trial counsel's actions, counsel did, in fact, conduct sufficient investigation to appropriately raise all issues of ineffective assistance of counsel during petitioner's direct appeal. Accordingly, this Court finds Oklahoma's procedural bar is an "adequate, as well as independent state ground," which under the facts of this case, effectively bars federal habeas review of Petitioner's claims regarding ineffective assistance of trial counsel, other than the issues raised on direct appeal.

## B. Trial Counsel

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court enunciated the legal standards which apply to claims of ineffective assistance of counsel in a criminal proceeding. First, the Court indicated that the defendant must establish that the representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must establish that the deficient performance prejudiced the defense. *Id.* 466 U.S. at 687, 104 S.Ct. at 2064. Failure to establish either prong of the *Strickland* standard will result in a denial of Petitioner's Sixth Amendment claims. *Id.* 466 U.S. at 696, 104 S.Ct. at 2069-2070. While ensuring that criminal defendants receive a fair trial, considerable judicial restraint must be exercised. As the Supreme Court cautioned in *Strickland*,

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all to easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Id.* 466 U.S. at 689, 104 S.Ct. at 2065. In order to establish prejudice in the guilt stage, the defendant has to show "there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Id.* 466 U.S. at 694, 104 S.Ct. at 2068. While at the penalty stage of a capital case, the defendant must show "there is a reasonable probability that, absent the errors, the sentencer--including an appellate court, to the extent it independently reweighs the evidence--would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.* In other words, deficient performance is prejudicial only where it is clear that "but for trial counsel's errors, there is a reasonable probability that the ultimate result would have been different", *Washington v. Johnson*, 90 F.3d 945 (5th Cir. 1996), *cert. denied,* 117 S.Ct. 1259, 137 L.Ed.2d 338 (1997); so that, the "confidence in the reliability of the verdict is undermined." *Id.*

The United States Supreme Court has indicated that every effort must be made by a reviewing court to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland v. Washington*, *supra* 466 U.S. at 689, 104 S.Ct. at 1065. In addition, the Court indicated the conduct of counsel is "strongly presumed" to have been within the wide range of reasonable professional assistance. *Id.*

Petitioner's first argument, trial counsel was ineffective for failing to object to improper prosecutorial arguments, has been fully addressed in paragraph IX(B) of this opinion. Having found Petitioner failed to establish prejudice, this issue need not be readdressed.

Next, Petitioner argues trial counsel was ineffective for failing to properly investigate and prepare a defense to the state's theory of the case. The gist of Petitioner's argument is trial counsel failed to obtain a psychological evaluation to rebut the state's case and there is simply no justification for counsel's failure to obtain this evaluation. Yet, at the evidentiary hearing, counsel indicated that a review of Petitioner's social history raised no red flags which would have justified a psychological evaluation of Petitioner. While counsel clearly had a duty to make a "reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary," *Strickland v. Washington*, 466 U.S. 668, 691, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984), this Court finds counsel conducted an investigation into the defendant's social history and then made a reasonable decision that further psychological testing was not necessary.[21] Further, based upon the evidence in this case, this Court finds Petitioner was not prejudiced by counsel's failure to obtain a psychological evaluation. Accordingly, Petitioner has failed to establish that he received ineffective assistance of trial counsel.

B. Appellate Counsel

---

[21]The facts in this case are distinguishable from *Battenfield v. Gibson*, 236 F.3d 1215 (10th Cir. 2001) in which defense counsel did not interview anyone regarding any possible mitigating aspects of the defendant's background.

Petitioner next complains he received ineffective assistance of appellate counsel when appellate counsel failed to raise his defaulted claims relating to actual innocence and failure of trial counsel to properly investigate and prepare a defense to the state's case. Claims of ineffective assistance of appellate counsel may constitute cause for state procedural default if appellate counsel's performance falls below the minimum standard established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See generally Murray v. Carrier*, 477 U.S. 478, 488-489, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Thus, petitioner must establish both (1) constitutionally deficient performance, by establishing that his appellate's conduct was objectively unreasonable, and (2) resulting prejudice, by establishing a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding - here, the appeal - would have been different. *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003). "A claim of appellate ineffectiveness can be based on counsel's failure to raise a particular issue on appeal, although it is difficult to show deficient performance under those circumstances because counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Id.* (citing *Smith v. Robbins*, 528 U.S. 59, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). Additionally, before ineffective assistance of appellate claims may be considered "cause" to excuse the procedural default of a constitutional claim, the claim must have been fairly presented to the state court as an independent claim. *Murray*, 477 U.S. at 489, 106 S.Ct. 2639; *Edwards v. Carpenter*, 529 U.S. 446, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000).

In this case, Petitioner first raised these issues during post-conviction proceedings. Since the Oklahoma Court of Criminal Appeals applied the three-tiered analysis set forth in *Walker v. State*, 933 P.2d 327 (Okla. Crim. 1997) which has been criticized by the Tenth Circuit Court of Appeals, this Court will apply the *Strickland* two prong standard to petitioner's claims. Because Petitioner asserts his appellate counsel rendered ineffective assistance by failing to raise these issues on direct appeal, this Court must first examine the merits of the omitted issue. *Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999). If the omitted issue lacks merit, counsel's failure to raise it will not be considered constitutionally ineffective assistance of counsel. *Id. See also*, *Parker v. Champion*, 148 F.3d 1219, 1221 (10th Cir. 1998) (citing *United States v. Cook*, 45 F.3d 388, 392-93), *cert. denied*, 525 U.S. 1151, 119 S.Ct. 1053, 143 L.Ed.2d 58 (1999). On the other hand, if the claim has merit, this Court must decide whether counsel's failure to raise the claim on direct appeal was deficient and prejudicial. *Hawkins*, 185 F.3d at 1152; *see also*, *United States v. Cook*, 45 F.3d at 394.

Specifically, Petitioner claims he is actually innocent and asserts appellate counsel was ineffective for failing to investigate the underlying case against Petitioner more thoroughly. To support this allegation, as stated previously, Petitioner cites to a disclaimer filed with the Oklahoma Court of Criminal Appeals by appellate counsel which indicates appellate counsel did not conduct a "full investigation" of Petitioner's case. *See*, disclaimer by direct Appeal counsel filed with the Oklahoma Court of Criminal appeals on July 7, 1997. Petitioner does not succinctly explain what was constitutionally deficient about appellant

counsel's performance. Rather, he simply adopts and incorporates the Post-Conviction Application at pp. 7 - 17 and 87 - 111 which was filed with the Oklahoma Court of Criminal Appeals on April 28, 1999.

Pages 7 - 17 of the Post-Conviction Application read like a fictional novel with absolutely no citation to the record in this case. In fact, the only thing purporting to support the statements made are three references to the Appendix to the post-conviction application within pp. 7 - 17. The first one appears on page 10 to support the statement: "At the time of her death, Melissa was 4' tall and weighed only 85 lbs (Appendix 39)." According to the Table of Contents to the Appendix, Appendix 39 is "Missing Person reports filed in Coal County September 8 & 9, 1991." The second reference is contained on page 13 to support the statement: "A few months later [Sherry] discovered that Lahoma, her mother, was sleeping with Jessie (see Appendix 37)." Appendix 37 is described as "Information regarding Lahoma Yaws." Appendix 37 is actually a handwritten letter which appears to be from Lahoma D. Yaws to Jessie Cummings postmarked on June 29, 1987. The final reference appears on page 15 to support this statement: "[Petitioner's dad] began losing a considerable amount of weight and became anorexic, according to his medical records. (Appendix 47)." Appendix 47 is a copy of medical records for Petitioner's dad, Jesse S. Cummings.

Even though no citations to the record are made, the heading on page 7 indicates the reader is being given "Information About the Victims, Judy Mayo & Melissa Moody, Needed to Understand the Testimony in this Case;" the heading on page 10 states

"Background Information About Jessie Cummings which Assists in Understanding this Case" and the heading on page 15 is "Sherry Cummings: The Dominate Person in the Cummings' Household." In effort to give some credence to this information, post-conviction counsel submitted two affidavits indicating they had interviewed numerous friends, relatives, and acquaintances of Petitioner and/or his wives, Anita Cummings and Sherry Cummings, in order to obtain information about the victims, petitioner and/or the wives. Counsel did not, however, obtain any affidavits to support what they proffer as "factual information." See Appendix 7 and 8 to Post-Conviction Application.

Pages 87 - 111 contain a proposition indicating Petitioner has been denied the effective assistance of counsel in all prior proceedings. Beginning on page 88, paragraph 22 through page 89, paragraph 26, the application contains what are identified as "Factual Contentions in Support." Basically, Petitioner admits he was represented at trial by OIDS staff attorney Paul S. Faulk and then he asserts "Mr. Faulk had a burdensome caseload and inadequate investigative and other resources to devote sufficient time . . . . . ." to Petitioner's case and that Faulk failed to adequately prepare for trial. Additionally, Petitioner indicates Joseph Minter was hired as co-counsel to assist Faulk; but that Minter also failed to adequately prepare for trial. Finally, Petitioner asserts Faulk failed to provide Minter with copies of all relevant and material information about Petitioner's case in order for Minter to have an adequate understanding of the case to allow him to provide Petitioner with effective advice. Again, with no citation to any affidavit or other documentation to support the allegation, Petitioner says "Mr. Minter reports that he was never given copies of the audio

63

tapes that Mr. Faulk received during discovery, and that Mr. Minter never listened to them, including the taped confessions of Anita that had not been transcribed until recently (*see* Appendix 18 & 19)." Again, Appendixes 18 and 19 of the Post-Conviction Application do not contain any affidavit or other documentation to support this bald allegation. Rather, they are merely copies of the transcribed confessions of Anita.

Beginning on page 89 paragraph 27, Petitioner asserts trial counsel were ineffective during the pre-trial and guilt phase for failing to request continuances and "in failing to investigate, develop and present available and relevant evidence" and that jurors were denied relevant evidence in assisting their judging of the credibility and reliability of the evidence and in failing to effectively cross-examine witnesses and impeach them with available information. The application for post-conviction relief, beginning at page 91 paragraph 37, contains numerous conclusory allegations. Again, absolutely no first-hand affidavits were submitted to support the allegations contained within the post-conviction application.[22] Rather, post-conviction counsel themselves submitted two affidavits indicating they had spoken with numerous witnesses during their investigation, but it was not possible to obtain affidavits. *See*, Appendixes 7 and 8. Post-conviction counsel did not even obtain affidavits

---

[22]In all of the state court records only two first-hand affidavits were located. The first affidavit, by Ella Faye Potter McAlister (hereinafter referred to as Ms. Potter), is attached as Exhibit A to Petitioner's Motion to Supplement Original Application for an Evidentiary Hearing filed in the Oklahoma Court of Criminal Appeals on April 27, 1988. Ms. Potter's affidavit, however, does nothing to support Petitioner's claim of actual innocence as it relates to his conviction of the Murder of Melissa Moody. Additionally, Ms. Potter was listed as a defense witness but not called as a witness. Since there is no affidavit from trial counsel asserting otherwise, this Court assumes counsel made a strategic decision not to call Ms. Potter. The second affidavit, by Stella Mae Knight, is attached as Exhibit C to the same motion. Again, this affidavit does not establish, even in conjunction with Ms. Potter's affidavit that Petitioner is actually innocent of the murder of Melissa Moody. Ms. Knight's testimony would have contradicted one small statement of Sherry Cummings' trial testimony regarding having received a call from Petitioner on September 5, 1991. Ms. Knight's affidavit reveals she was subpoened by defense counsel but was not called to testify. Again, this Court must assume, without an affidavit to the contrary, that defense counsel made a strategic trial decision not to call Ms. Knight.

from trial counsel to support their bold assertions that trial counsel failed to interview certain witnesses or to listen to taped statements of Anita Cummings which were transcribed by post-conviction counsel.[23]  *See*, Verified Original Application for Post-Conviction Relief, Request for Evidentiary Hearing and Request for Discovery, filed on April 28, 1998, at p. 89.  Further, Petitioner has not now submitted any affidavits to support the conclusory allegations made by post-conviction counsel.

In making the showing required by *Strickland*, a convicted defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984).  He must also show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* U.S. at 694, S.Ct. at 2068.  Conclusory allegations regarding counsel's alleged errors are simply insufficient to satisfy the requirements of *Strickland*.  *United States v. Ray*, 931 F.2d 64 (10th Cir. 1991).[24]  *See also*, *United States v. Mealy*, 851 F.2d 890, 908 (7th Cir. 1988) (conclusory allegations cannot satisfy prejudice prong of *Strickland* test).  Furthermore, while Petitioner requested an evidentiary hearing on many of these issues, conclusory allegations unsupported by specific factual evidence is insufficient to require a court to grant an

---

[23]Since obtaining affidavits from individuals who are willing to speak with counsel is not cost prohibitive or time consuming, post-conviction counsel's  statement "due to resource and time limitations, it was not possible to take depositions or obtain affidavits from everyone who has personal knowledge of information material [sic] relevant to this case", Appendix 7, at p.2, ¶ 3, seems disingenuous.  This is especially true where counsel never indicated affidavits from these individuals could not be obtained absent court order.

[24]Unpublished opinion cited for persuasive value.  *See* 10th Cir. R. 36.3(B).

evidentiary hearing. *See*, *Hopkinson v. Shillinger*, 866 F.2d 1185, 1211 (10th cir. 1989). "Mere requests for evidentiary hearings will not suffice; [a] petitioner must be diligent in pursuing the factual development of his claim." *Dowthitt v. Johnson*, 230 F.3d 733, 758 (5th Cir. 2000), *cert. den.* 532 U.S. 915, 121 S.Ct. 1250, 149 L.Ed.2d 156 (2001).

Additionally, to make a credible claim of actual innocence, Petitioner must support his allegations with "new *reliable evidence* – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995) (emphasis added). A habeas petitioner does not come to the court in the same position as one who is merely accused of a crime. Rather, once convicted by a jury of a capital offense, Petitioner loses the benefit of the presumption of innocence and comes before this Court with a "strong--and in the vast majority of the cases conclusive--presumption of guilt." *Id*., U.S. at 866, S.Ct. at 326 n. 42. To establish the requisite probability that a constitutional violation has probably resulted in the conviction of one who is actually innocent, the petitioner must show that it is more likely than not that "no reasonable juror" would have convicted him in light of the new evidence. *Id.*, U.S. at 867 and 868, S.Ct. at 327 and 329. "The question is not whether [Petitioner] was prejudiced at his trial because the jurors were not aware of the new evidence, but whether all the evidence, considered together, proves that [Petitioner] was actually innocent, so that no reasonable juror would vote to convict him." *House v. Bell*, —U.S. —, 126 U.S. 20064, 2087 (2006) (Roberts, C.J., dissenting).

Unlike the Petitioner in *Schlup*, who had sworn statements of several eyewitnesses that Schlup was not involved in the crime, or the Petitioner in *House, supra*, who attacked the semen and blood evidence used at his trial, including a putative confession, suggesting someone else committed the murder, Petitioner is requesting this Court to hear his defaulted claims based solely on a conglomeration of information obtained from numerous individuals who were not placed under oath and who are not even identified as supplying specific portions of that information.[25]  Rather, all of the information presented is blatant hearsay. Such information is simply not credible.  In light of the evidence presented at trial, this Court finds Petitioner has failed to establish that it is more likely than not that no reasonable juror would have convicted him.  Therefore, Petitioner has failed to present evidence sufficient to establish that this court's refusal to hear the defaulted claims would be a "miscarriage of justice."  *Schlup, supra*, U.S. at 326, 237, S.Ct. 851.

Furthermore, this Court finds Petitioner has failed to establish that appellate counsel's failure to investigate more fully rendered his performance unreasonable under prevailing professional norms.  As recognized by the Oklahoma Appellate Court, the brief, as well as other pleadings filed by direct appeal counsel, establish that "appellate counsel raised sixteen non-frivolous claims at least equally meritorious to those which were omitted . . ." *Cummings v. State*, 970 P.2d 188, 191 (Okla. Crim. App. 1998).  Additionally, based upon

---

[25]The only exception is one statement in the affidavit of Kevin Pate, Appendix 8, in which Mr. Pate indicates he interviewed Michael Williams who acknowledged "he was, at least, on the verge of a serious relationship with Anita prior to her arrest and at the time of her arrest when they worked together for Eddie Fields."  *Id.*, at p. 6 ¶ 25.  This statement does nothing to establish Petitioner's "actual innocence" herein.

records herein, this Court can not say that appellate counsel omitted a "dead-bang winner." *See*, *Banks v. Reynolds*, 54 F.3d 1508, 1515 (10th Cir. 1995) ("An appellate advocate may deliver deficient performance and prejudice a defendant by omitting a 'dead-bang winner.'") (quoting *United States v. Cook*, 45 F.3d 388, 394-95 (10th Cir. 1995). Having failed to establish appellant counsel rendered ineffective assistance. Therefore, Petitioner is not entitled to relief on this issue.

## C. Post-conviction counsel

Petitioner next appears to asserts his post-conviction counsel was ineffective in failing to present the same arguments that he alleges trial and appellate counsel were ineffective for failing to present. There is no constitutional right to effective assistance of post-conviction counsel, even in death penalty cases. *Coleman v. Thompson*, 501 U.S. 722, 752 (1991), *citing Pennsylvania v. Finley*, 481 U.S. 551 (1987) and *Murray v. Giarratano*, 492 U.S. 1 (1989). *See also*, 28 U.S.C. § 2254(i). Accordingly, this claim is frivolous and is, therefore, denied.

## XIII. APPELLATE RESENTENCING

In his first supplemental proposition, Petitioner argues the Oklahoma Court of Criminal Appeals reweighing of aggravating and mitigating factors after striking an aggravating factor violates the Sixth and Eighth Amendments to the United States Constitution. As previously indicated, in *Clemmons v. Mississippi*, 494 U.S. 738, 741, 110 s.Ct. 1441, 1444, 1446-1447, 108 L.Ed.2d 725 (1990), the United States Supreme Court upheld the constitutionality of reweighing by appellate courts upon a finding of an invalid

aggravating circumstance, holding "the Federal Constitution does not prevent a state appellate court from upholding a death sentence that is based in part on an invalid or improperly defined aggravating circumstance either by reweighing of the aggravating and mitigating evidence or by harmless-error review."

Petitioner asserts *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), *Apprendi v. New Jersey*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), and *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) invalidated the Oklahoma Court of Criminal Appeals' reweighing practice in death penalty appeals. These cases did not, however, overrule *Clemons*. Rather, the Court in *Ring* limited the holding to the facts of Arizona's death penalty scheme, stating:

> Ring's claim is tightly delineated: He contends only that the Sixth Amendment required jury findings on the aggravating circumstances asserted against him. . . . Nor does he argue that the Sixth Amendment required the jury to make the ultimate determination whether to impose the death penalty. *See Proffitt v. Florida*, 428 U.S. 252, 252 (1976) (plurality opinion) ("[I]t has never [been] suggested that jury sentencing is constitutionally required."). He does not question the Arizona Supreme Court's authority to reweigh the aggravating and mitigating circumstances after that court struck one aggravator. *See Clemons v. Mississippi*, 494 U.S. 738, 745 (1990).

*Ring v. Arizona*, 536 U.S., at 597, 122 S.Ct., at 2437, n. 4. Justice Scalia's concurring opinion makes it even clearer that the ultimate decision regarding the specific sentence can be left to a judge so long as a jury was required to find any aggravating factors beyond a reasonable doubt. *Id.*, 536 U.S., at 612-613, 122 S.Ct., at 2445.

In considering Petitioner's argument that *Ring* had changed the fact-finding standard in capital cases, the Oklahoma Court of Criminal Appeals stated it had recently addressed

and rejected this issue in *Torres v. State*, 58 P.3d 214 (Okla. Crim. App. 2002). In denying

a *Ring*-based challenge in *Torres*, the Oklahoma Court of Criminal Appeals stated:

> Torres misunderstands the structure of Oklahoma's death penalty statutes. First, a defendant must be found guilty of first degree murder and at least one aggravating circumstance must be alleged. Next, the State must present evidence supporting the aggravating circumstances, and jurors must find at least one aggravating circumstance unanimously beyond a reasonable doubt, before a defendant is eligible for the death penalty. *Ring* describes a substantive element of a capital offense as one which makes an increase in authorized punishment contingent on a finding of fact. Using this description, the substantive element of capital murder in Oklahoma is the jury's finding of the aggravating circumstance necessary to support a capital sentence. It is that finding, not the weighing of aggravating and mitigating circumstances, that authorizes jurors to consider imposing a sentence of death. That is, the increase in punishment from life imprisonment without parole to the death penalty is contingent on the factual finding of an aggravating circumstance.
>
> Oklahoma's provision that jurors make the factual finding of an aggravating circumstance beyond a reasonable doubt is all that *Ring* requires. Once that finding is made, the substantive elements of the capital crime are satisfied. Contrary to Torres's argument, this Court does not engage in fact-finding on a substantive element of a capital crime when reweighing evidence on appeal. The jury has already found the substantive facts- - the existence of aggravating circumstances- -and this Court does not substitute its judgment for that of the jury's regarding that finding when reweighing. The jury itself, having found an aggravating circumstance, is free to balance aggravating circumstances and mitigating evidence.

*Id.*, at p. 216.

Again, Petitioner has simply failed to establish that the decision to reweigh the

aggravating and mitigating evidence was contrary to clearly established Supreme Court

precedent. Therefore, Petitioner is not entitled to relief on this issue.

## XIII. CUMULATIVE ERRORS

In his eleventh ground for relief, Petitioner alleges the accumulated errors occurring in his trial and on appeal dictate that he should be granted habeas relief. In considering cumulative error, the Tenth Circuit has indicated a reviewing court should conduct the same inquiry as for individual errors – were the defendant's substantial rights affected; with the focus being on "the underlying fairness of the trial." *United States v. Woods*, 207 F.3d 1222, 1237-38 (10th Cir. 2000). Having reviewed the entire state court records, this Court recognizes that the Oklahoma Court of Criminal Appeals found errors occurred during Petitioner's trial. The Constitution does not, however, guarantee an error-free, perfect trial. *See*, *United States v. Hastings*, 461 U.S. 499, 508-9, 103 S.Ct. 1974, 1979, 76 L.Ed.2d 96 (1983). Based on the overwhelming evidence of Petitioner's guilt, this Court finds that the "judgment was not substantially swayed by the errors" and the errors did not substantially influence the jury's verdicts. Accordingly, this claim for relief is also denied.

## CONCLUSION

For the reasons stated herein, Petitioner's Petition for Writ of Habeas Corpus (Docket No. 15) and his Supplemental Petition for Writ of Habeas Corpus (Docket No. 61) are hereby denied.

DATED this 11th day of August, 2006.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma